F. G. ROSS & WIFE *v.* J. F. DRAPER.

*Gift.    Reference.    Amendment.    Officer Put on Inquiry.*

1. It is the cause of action which is referred; and such a judgment is to be rendered upon the facts as any legitimate amendment of the declaration will admit of; thus, in an action of replevin, when husband and wife are joined, if the declaration does not allege that they are husband and wife, and that she is the owner of the property, it may be amended so as to show these facts.

2. The law only requires the donee to take such possession as the nature of the property admits of in order to protect it against attachment by the creditors of the donor; thus, a father having purchased a piano for his daughter, moved it into his house, and, some two months afterwards, on her attaining her majority, made her a birthday party, and in a formal and public manner, in the presence of all the guests, gave it to her. After this the daughter used the piano as her own, and all the family treated it as hers, except it was stored in the father's house, and by his consent was attached, without her knowledge. After her marriage she lived at her father's house some, and away some, but the piano was left where it had been, as she had no place to put it. *Held*, that the title to the property passed, and that it was not attachable by the creditors of the donor.

3. The officer making the attachment was bound to take notice of the fact that the property was not in the possession of the debtor, and inquire of those on whose premises and in whose possession he found it, for whom they held it; and he and the creditor were affected by all the knowledge that would be gained by such inquiry.

REPLEVIN. Heard by the court on the report of a referee, September Term, 1882, ROYCE, Ch. J., presiding. Judgment for the defendant. The case is stated in the opinion.

*Farrington & Post*, for the plaintiffs.

The cause having been referred, all questions as to form are waived. *Granite Co.* v. *Farrar*, 53 Vt. 585; *Morse* v. *Beers*, 51 Vt. 359. The husband and wife may sue jointly. *Myers and Wife* v. *Lyon*, 51 Vt. 272. The gift was valid in law. *Flanagan* v. *Wood*, 33 Vt. 332; *Niles* v. *Warner*, 19 Vt. 609; *Hall* v. *Parsons*, 17 Vt. 271; *Allen* v. *Egerton*, 3 Vt. 442; *Stiles* v. *Shumway*, 16 Vt. 435; Rob. Dig. 619.

*John I. Gleed*, for the defendant.

The gift was incomplete, as there was not a sufficient delivery of property. 2 Kent (8th Ed.), 554; 20 Vt. 597; 53 Vt. 57; 47 Vt. 513.

The opinion of the court was delivered by

ROSS, J.   I.   This is an action of replevin for a piano. The case was referred and came to the County Court on the referee's report. Such a judgment was then to be rendered upon the facts reported as any legitimate amendment of the declaration would admit of. An amendment alleging that the plaintiffs were husband and wife, and that the piano was the property of the wife, would neither add a new cause of action nor a new party to the suit, and would be permissible. The cause of action would be the piano both before and after the amendment, and the right in controversy would be that of the two plaintiffs to recover it. If the piano is the sole property of the wife, in an action at law the joinder of the husband as a co-plaintiff would be necessary. The bond was conditioned upon the right of the plaintiffs to have the piano delivered to them as against the defendant who had attached it as the property of a third person. Under the decisions of this court in regard to judgments on referees' reports, holding that the cause of action or subject-matter in controversy is the foundation of the judgment, if the pleadings can be so amended legally as to

conform to the facts reported, we entertain no doubt of the right of the plaintiffs to maintain the action, if the facts reported entitle the wife to the possession of the piano.

II. The controlling facts found by the referee are that in 1864 the wife's father bought the piano for her, and, in two or three months after, on the occasion of her attaining her majority, gave her a birthday party, and in the presence of the assembled guests, took her to the piano, told her that was her birthday present from him and that he gave it to her; that thereafter the family always spoke of it as her property and that she used and treated it as such; that she remained at home until her marriage in 1867; that she then went away from home to live, and left the piano in her father's house, and never removed it therefrom, as she never had a suitable place to put it; that she visited her father's house from time to time, stopping three or four months seven or eight years ago, and had been living in her father's family for the last three years and more, and on all these occasions used and treated the piano as her own; that the piano remained all this time in the house of her father; that her husband always treated it as her separate property; that in 1877 it was attached and sold by the consent of her father as his property unbeknown to her, but was not removed from his house. There is no fact found, save his consent to its sale, that after the gift the father ever exercised dominion over the piano further than to store it in his house. The only question submitted by the referee to the court is whether these facts constitute a valid gift of the piano from the father to the plaintiff wife. We entertain no doubt on this question. The language used, as well as the occasion, indicate a clear intention of the father to pass the title of the piano to the daughter, and as clearly her intention to accept the gift. There was, therefore, the making and acceptance of the gift. He spoke of it, as did the family thereafter, as her property. She used and treated it as her property. This must mean that she assumed and exercised the dominion of an owner, took and retained such possession as the nature of the property admitted of, if capable of being locked, took possession of the key, locked and unlocked it, used it her-

self, and dictated in regard to its use by others.  It matters not that the property was of such a nature that she could not take it into manual possession, as she could have a watch, ring, or set of jewelry.  If the gift had been of either of the last-named articles, and the referee had found that thereafter the daughter ever used and treated it as her property ; that the father and family so treated and spoke of it, although it had been kept in her father's house, and on her marriage and leaving the home of her childhood, because she had no suitable place to keep it she still left it there, could there be the least doubt it would be a perfected gift, that the owner would be the daughter both as against the father and his creditors ?  We think not.  The law recognizes the fact that all species of personal property are not capable of the same kind of possession, and it only requires the purchaser or donee to take such possession as the character and nature of the property admit of, in order to protect it against attachment by the creditors of the vendor or donor.  *Sanborn* v. *Kittredge,* 20 Vt. 632 ; *Hutchins* v. *Gilchrist,* 23 Vt. 82 ; *Birge* v. *Edgerton,* 28 Vt. 291 ; *Fitch* v. *Burk,* 38 Vt. 683 ; *Sterling* v. *Baldwin,* 42 Vt. 311.

The property in contention was of that bulky character that forbids manual possession.  The only possession its nature admitted of consisted in its use and treatment.  The treatment of an owner includes acts of dominion and control.  The property itself was such as is much more generally used by females than males, and for that reason more likely to be owned by the former.  The occasion when the gift was made, especially in a country town, would give notoriety to the transaction equal to a sale in market overt.  It is to be remembered that in these days it is not an uncommon thing for the wife and the children, while living at home, each to have and keep separate property in the common home of them all.  It is not a matter of course, and no creditor has the right to assume, that all the personal property in the house belongs to the husband and father.  It is not uncommon for the daughters to have rooms set apart for their special use, furnished with furniture purchased by, or given to them, nor for them to own sewing machines or musical instruments.  The facts reported do not show a joint possession of the piano by the father and

daughter during the two or three years she was at home after the gift and before her marriage, nor after her marriage. He allowed it to be kept upon premises owned by him. This was the extent of his use, control and acts of ownership, save alone his consenting to its sale on his debt some twelve or thirteen years after he had given it away, and this act was not known by the daughter until long after it transpired. The attaching creditor, who was the purchaser at the sale, never took possession of it. The defendant attached it as the property of such purchaser. He found it not in his possession but on the premises of the father, and in the possession of the daughter. He was bound to take notice of the fact that the property he was attaching was not in the possession of the debtor, and was bound to inquire of those on whose premises and in whose possession he found it, for whom they had the piano in store and in possession. *Hildreth* v. *Fitts*, 53 Vt. 684. Being bound to inquire, he and the creditor for whom he was acting were affected by all the knowledge that would be gained by such inquiry. He would have learned of the gift, of the notoriety that accompanied the making of it, that thereafter the father and family spoke of and treated it as the property of the daughter; that she always so used and treated it, and for over two years before her marriage had it in her personal possession, so far as the nature of the property was capable of personal possession. The transaction was natural, honest, notorious, and of long standing. There was no fraud in fact intended or attempted. The property was not in the possession of the debtor, hence no fraud in law.

Judgment reversed, and judgment rendered for the plaintiffs to recover nominal damages and costs.

See Fletcher *v.* Fletcher, *ante,* 325.