Argued June 25; affirmed July 15, 1941

SIMONTON *v.* DWYER ET AL.
PRICHARD *v.* DWYER ET AL.

(115 P. (2d) 316)

Before KELLY, Chief Justice, and BAILEY, RAND, ROSSMAN and BRAND, Associate Justices.

*A. E. Clark*, of Portland (Clark & Clark, both of Portland, on the brief), for appellants.

*Borden Wood*, of Portland (McCamant, Thompson, King & Wood, of Portland, on the brief), for respondents.

RAND, J. These suits were instituted separately by two of the daughters of Anthony J. Dwyer, who died on June 23, 1939. In her complaint, each plaintiff prays that she be adjudged to be the owner of 50 shares of stock in the Southeast Portland Lumber Company, a corporation which was organized by the father of the plaintiffs in 1925. The issues being identical, the cases were consolidated and tried together in the circuit court under a stipulation that the evidence offered should be considered in both cases. Upon the hearing here, they were argued and submitted together and, hence, this decision will apply to both.

Anthony J. Dwyer had been twice married. By his first wife, who died in 1899, he had four daughters, one of whom predeceased her father. By his second wife, who is still living, he had three sons and two daughters. The plaintiffs are daughters of the first marriage.

The Southeast Lumber Company has an authorized capital stock of $300,000, divided into 3,000 shares of the par value of $100 each. Until 1929, when decedent gave to each of his two oldest sons 250 shares of the capital stock of said corporation, he was the sole owner

of all said stock and, until his death, he was president of the corporation and actively controlled its affairs. On June 5, 1933, the decedent was the owner of 2500 shares of the capital stock of said corporation. On that day he surrendered to the corporation certificates for 2000 shares of stock and had the same cancelled and, in lieu thereof, the corporation, under his direction, issued new stock certificates in the name of his wife and of his children by both marriages in the following amounts: to his wife, 300 shares; to four of the five children of his second marriage, 250 shares each; to his youngest son, 500 shares; and to each of the four children of his first marriage, 50 shares. These new stock certificates were all signed by him as president of the corporation and by E. C. Dwyer, one of his sons, as secretary thereof. With the exception of the four certificates issued to the four daughters of the first marriage, each of the new certificates was delivered to each of the parties to whom they had thus been transferred. None of the four certificates so issued to his four daughters by his first marriage were delivered to them and, with one exception, he kept them in his possession until the time of his death and they are now in the possession of the administrator of the father's estate.

Nellie D. Doering, who was living at the time these certificates were issued, predeceased her father and, upon her death, her father caused her certificate to be cancelled and a new certificate in lieu thereof to be issued in his own name.

Until shortly prior to their father's death, none of the children of the first marriage were notified that any certificates had been issued to them. About one year prior to his death, the decedent said to his daughter, Mrs. Prichard, one of the plaintiffs herein: "May,

I want you to know that I have given $5,000 in stock in the company to each of you girls. See that you get it when the time comes'', to which his daughter replied: ''Thank you, dad. That is nice of you''. He then cautioned her to say nothing of it to the others until ''the time comes''. About two years prior to decedent's death, as appears from the deposition of Margaret E. Halloran, a relative of decedent's first wife, Mr. Dwyer told her that he had organized a company to operate his business and said further: ''I have given each of my children shares in the company and there will be no trouble after my death in settling my estate.'' Except as above, none of the children, until after their father's death, had any knowledge that any of these certificates had been issued to them.

The evidence shows that after 1929 and up to and including 1933 the corporation was operating at a loss and during the year 1934 its net gain was only $587.85. After that it operated at a profit but what that profit was is not disclosed. However, no dividends were declared during the father's lifetime.

The evidence further shows that the corporation was operated as a family concern and, as one of the sons testified, his father would brook no interference in business matters from any one. If any notice of a stockholders' meeting was ever given, it was not given to any of the four daughters of the first marriage and, hence, their failure to participate as stockholders of the corporation during their father's lifetime is wholly irrelevant and immaterial upon any issue in the case.

It is contended that the father's failure to deliver these certificates to his four daughters and his custody of them during his lifetime rendered ineffectual his attempt to make a gift of these certificates to his

daughters and prevented the transaction from becoming a valid and completed gift.

It is also contended that, since there was no acceptance by the four daughters of these certificates, the gift was also invalid.

With these contentions we are unable to agree. It seems obvious that, when Mr. Dwyer surrendered to the corporation his stock certificates, aggregating 2000 shares, and had the same cancelled and, in lieu thereof, new certificates issued to his wife and to all his children in various amounts, he intended to make a gift of these shares of stock to each relative named in the certificates. The fact that he gave a greater number of shares to the children of the second marriage than to those of the first marriage raises no doubt as to his intention to make a gift to each. On the contrary, it is proof of such an intent because the evidence shows that his second wife and the children of his second marriage, and not the children of the first marriage, had been largely instrumental in helping him acquire his property, and, hence, we hold that, when causing these certificates of stock to be issued to the various members of his family, he intended to make a gift of them to those named therein.

■ The contention that the manual delivery of these stock certificates by the donor to the donee was necessary to constitute a valid gift is not well taken.

■ It must be remembered that the usual and ordinary way of making a gift of corporate stock is for the holder of a certificate to indorse the same and to deliver it to the donee. In that case, the delivery of the indorsed certificate is essential to the validity of the gift. Here, the transfer was made by delivering up his own certificates and having new certificates issued to the donees

in lieu thereof. Therefore, the transfer of the stock was rightfully made and completed, and vested in the transferees the legal title to the stock. For that reason, a manual delivery of the newly issued stock was not necessary to complete the gift. As said by Shaw, C. J., in *Fisher v. Essex Bank*, 5 Gray (Mass.) 373, 378:

"When a transfer is rightfully made and completed, it vests a right in the transferee, not merely to act in the place of the vendor and in his name, but substitutes him, in all respects, as the legal and only holder of the shares transferred, to the same extent to which they were before held by the vendor. The title, therefore, by which such interest is held, is strictly a legal title."

See also 1 Machen on Modern Law of Corporations, 1908 ed., section 833 and footnote. There the author says:

"A completed transfer of a share invests the transferee with all the rights and obligations incident to ownership previously enjoyed and borne by the transferor. The transfer is complete when, and not before, the transferee attains the status of shareholder not merely with respect to the transferor but also with respect to the corporation. The legal title to the shares may then be said to pass."

See also note, 99 A. L. R., p. 1080, and authorities there cited, where it is said:

"There is a complete gift of corporate stock where, by the direction of its owner, it has been transferred to the donee on the books of the corporation, and a new certificate issued in the name of the donee, or a certificate is issued in the first instance in the name of the donee, although the certificate so issued is retained by the donor or the corporation, and not delivered to the donee."

In *Reed v. Roberts*, 85 Pa. 84, 86, the court said:

"* * * But here the gift is complete by the delivery of the thing itself, for transferring the shares

to her upon the books of the company is putting her in complete possession of the thing assigned, and clothing her with the complete legal title. It stands in the place of a delivery. Such an act performs precisely the office which an actual delivery would perform if it were a chattel. It is as complete a delivery as the nature of the thing will admit of. There can be no clearer evidence of a design to part with the right of property in favor of another than an absolute transfer of the legal title to her for her own use. * * * The certificates were but secondary evidence of her ownership, and only useful for purposes of transfer. They were nothing more than the official declaration by the company of what already appeared on their books. There was here no *locus poenitentiae*. He (the donor) could not have used the certificates, nor could any one have used them except Miss Foster (the donee).''

The above was quoted with approval in *Phillips v. Plastridge*, 107 Vt. 267, 179 A. 157, 99 A. L. R. 1074. Continuing in that case, the court said:

``* * * And in Chicago Title & Trust Co. v. Ward, 332 Ill. 126, 163 N. E. 319, 322, '* * * a transfer of shares on the books of the corporation passes the legal title to the person named in the stock certificate. The certificate being only secondary evidence of title and not necessary, the transfer on the books at the instance of the donor being the best evidence of delivery of which the gift is susceptible, no other rule is compatible with the principle of protection of the donee against retraction of a completed gift.' To the same effect are Thomas v. Thomas, 70 Colo. 29, 197 P. 243, 245; Deming v. Williams, 26 Conn. 226, 68 Am. Dec. 386, 387; Barnhouse v. Dewey, 83 Kan. 12, 109 P. 1081, 1083, 29 L. R. A. (N. S.) 166; and see Fletcher v. Fletcher, 55 Vt. 325, 327; Ross v. Draper, 55 Vt. 404, 407, 45 Am. Rep. 624. In Re Estate of Heller, 210 Wis. 474, 480-482, 246 N. W. 683, cited by the plaintiff, seems to be contrary, although there were circumstances from which it might be possible to infer that the stock had not in fact passed out of the dominion

and control of the alleged donor. However, we approve and adopt the doctrine stated in the cases previously mentioned. Other decisions cited by the plaintiff deal with situations where a stock certificate having been indorsed, remained in the possession of the alleged donor, or where, in one way or another, complete control over the securities had not been relinquished by him.''

By causing the transfer to each of the plaintiffs of 50 shares of stock in the corporation upon its books and having new certificates issued for that number of shares in the name of the plaintiffs, the father divested himself of all right, title and interest in the stock thus transferred and vested the legal title thereto in the plaintiffs, and thereby irrevocably placed the stock beyond his dominion or control. That this transfer was made under his direction is proved by his own signature as president on the certificates issued in the name of the plaintiffs. He thus placed himself in the position that any interference by him with the stock without consent of the plaintiffs would be unauthorized and unlawful and, hence, the rights of the plaintiffs in no manner depended upon delivery of said certificates to them.

■ The further contention that, in order to render the gift valid, it was necessary for the plaintiffs to accept the gift is equally unfounded, for, as said in *Phillips v. Plastridge*, supra, the law presumes an acceptance of the gift by the donee when it is unaccompanied by any condition to be performed by him, and especially is this so when the gift is from a parent to a child. Hence, no notice of the gift to the plaintiffs and no act of acceptance upon their part were necessary to complete the gift.

In each of the above cases, the decree of the circuit court is affirmed.