Argued March 8; affirmed April 18, 1944

# MANNING *v.* UNITED STATES NATIONAL BANK OF PORTLAND ET AL.

(148 P. (2d) 255)

Before Bailey, Chief Justice, and Rossman, Kelly, Lusk, Brand and Hay, Associate Justices.

*George Neuner, Frank Holmes,* and *Loyd Crow,* all of McMinnville, for appellants.

*Roy McCourry,* of McMinnville, for respondent.

BRAND, J.

The pleadings sufficiently disclose a justiciable controversy and the issues thus raised will become clear from a review of the evidence. Prior to April 29, 1939, Edward D. Hendricks was the sole owner of four certificates of the common capital stock of the United States National Bank of Portland, totaling one hundred shares. Concerning a conversation with her husband which took place a few days prior to that date, Mrs. Hendricks testified as follows:

"A. Well, he told me that he was going to have that one hundred shares put in my name, also, because after his death I would have something to live on, you see. He was afraid I wouldn't be left the proper funds, you know, and he was going to leave that for me in case I would out-live him and it would be mine.

"Q. What happened after that, then?

"A. That is about all that was said * * * ."

The usual form of assignment was printed on the back of the four certificates. In accordance with the usual practice, these forms were signed in blank by Edward D. Hendricks. From the testimony and stipulation of the parties, it further appears that on April 27, 1939, Edward D. Hendricks delivered the four certificates thus endorsed to L. H. Briedwell as manager of

the McMinnville Branch of the United States National Bank of Portland and instructed the said Briedwell to

" * * * instruct said United States National Bank of Portland, Oregon, to cancel said one hundred shares of said stock, represented by said four certificates, and issue in lieu thereof a new certificate for one hundred shares of said stock in said corporation to Edward D. Hendricks and Margaret M. Hendricks, as joint owners, with right of survivorship, and not as tenants in common, * * *."

Thereupon the four certificates representing one hundred shares were transmitted by the McMinnville Branch to the parent organization in Portland. With the certificates, Briedwell, as manager of the McMinnville Branch, sent to the stock transfer department at Portland, the following letter:

"We enclose herein the following United States National Bank stock certificates registered in the name of Edward D. Hendricks:

Cert. No. 10148 for 14 shares;
Cert. No. X 414 for 6 shares;
Cert. No. X1681 for 30 shares;
Cert. No. X2415 for 50 shares.

"Mr. Hendricks has requested that the various certificates be combined into one certificate of 100 shares issued to Edward D. Hendricks and Margaret M. Hendricks as joint tenants with the right of survivorship, and not as tenants in common.

"This change was suggested by Mr. Hendricks' attorney, who has advised him that the certificates can be re-issued in the name of the survivor in the event of the death of either of the joint owners. While we did not feel inclined to question the attorney's statement, we know that the right of survivorship of personal property is not generally recognized in various states including our own.

"We would accordingly suggest that the certificates be held in their present form until we have received your definite advice in the matter.

"Very truly yours,
L. H. B.
Manager"

Edwin C. Pierce, trust officer of the United States National Bank at Portland, testified that it was upon the record made by Briedwell's letter that the bank acted. The assignments on the back of the four certificates which had been executed in blank by Edward D. Hendricks were completed by typing in the names "Edward D. Hendricks and Margaret M. Hendricks" and the date so that the assignments then read:

"FOR VALUE RECEIVED _____ have bargained, sold, assigned and transferred, and by these presents do bargain, sell, assign and transfer and deliver unto Edward D. Hendricks and Margaret M. Hendricks, the Capital Stock named in the within Certificate, and _____ do hereby constitute and appoint _____ true and lawful Attorney, irrevocable, for _____ and in _____ name and stead, but to _____ use, to sell, assign, transfer and set over all or any part of the said Stock, and for that purpose to make and execute all necessary acts of assignment and transfer, and one or more persons to substitute with like full power.

"Dated April 29, 1939
"EDWARD D. HENDRICKS

"Signed and acknowledged in presence of:
FRANK W. FENTON."

On the same date, R. L. Orem, executive vice-president of United States National Corporation, wrote to

L. H. Briedwell, manager of the McMinnville Branch, as follows:

"We have transferred stock received in your letter of April 27, 1939, and enclose stock certificate No. X2946 for 100 shares issued to Edward D. Hendricks and Margaret M. Hendricks, and upon the death of either, the survivor of either. Attached to the certificate is our usual form of receipt on which you will please obtain the signatures of Mr. and Mrs. Hendricks and at the same time collect from them $1.70 to cover transfer tax.

"We agree with you that the right of survivorship in connection with personal property is not recognized. However, in issuing the stock we are following Mr. Platt's opinion of February 2, 1939, a copy of which is enclosed.

"Very truly yours,

R. L. OREM

Executive Vice President."

A new certificate for one hundred shares and a form of receipt to be signed by Mr. and Mrs. Hendricks was enclosed. Upon receipt by the McMinnville Branch of the new certificate, the form of receipt and the letter of Mr. Orem, Mr. Hendricks was notified that he and Mrs. Hendricks should come to the McMinnville Branch and sign the receipt. Mrs. Hendricks testified, "* * * he told me that they had notified him that the certificate was there and for me to come down with him and sign a receipt for it, and he notified me between twelve and one o'clock." Mrs. Hendricks thereupon met her husband at the United States National Bank in McMinnville, the new certificate of stock was produced and she read it. The form of receipt was also produced and Mr. and Mrs. Hendricks each signed it. The stock certificate was handed to Mr. Hendricks and

he and his wife left the bank and walked to the Federal Savings and Loan office in McMinnville. Mrs. Hendricks testified that on arrival at the Federal Savings and Loan office, her husband said, "Now, you go home and I will put this away." She went home and paid no more attention to the matter. She left it in his care, knowing that he would look after it. The delivery of the stock and the receipting for it occurred on May 2, 1939.

The material portion of the new stock certificate thus delivered and receipted, reads as follows:

"This is to certify that Edward D. Hendricks and Margaret M. Hendricks, and upon the death of either, the survivor of either, is owner of one hundred shares of the common capital stock of the United States National Bank of Portland, Oregon * * *."

From the date of the issuance of the stock until the death of E. D. Hendricks on March 25, 1942, dividends were paid on the stock. They came in the form of checks payable to Edward D. and Margaret M. Hendricks and both were required to sign the checks before they could be cashed. The dividends were spent sometimes by one and sometimes by the other, but the greater part was spent by Mrs. Hendricks.

More than two years after the delivery of the stock certificate and on the 18th day of July, 1941, E. D. Hendricks executed a will under the provisions of which the claim of Edward L. Hendricks is based. The pertinent portions of the will are as follows:

"I give, devise, and bequeath unto my wife Margaret M. Hendricks * * * the income from certain certificates of the United States National Bank of Portland, Oregon aggregating a principal of about

$4,000.00 for and during her natural lifetime the principals of said sums to be held by my trustee and at the death of my said wife Margaret M. Hendricks I will and bequeath the principals of the above sums unto my grandson Edward L. Hendricks.''

The next paragraph of the will purports to bequeath to G. W. Manning as trustee

''* * * the shares in the United States National Bank of Portland, Oregon aggregating about $4,000.00 * * * to be held and used for the benefit of and the income to be paid to my wife Margaret M. Hendricks during her lifetime.''

Edward L. Hendricks, grandson of the testator, was made residuary legatee.

Prior to its execution, the will was read in the presence of Mr. and Mrs. Hendricks. The will was drawn by Frank Holmes as attorney for the testator. The attorney made two visits to the home of Mr. Hendricks and upon the second occasion the will was signed. After the first visit, Mrs. Hendricks talked to her husband about the will. She testified:

''* * * I thought he didn't just understand how he was leaving it; these buildings and all, and we talked a few minutes about it—just a word or two and that is all there was to it.''

Mr. Holmes, in partial corroboration, testified that as he started to leave, Mrs. Hendricks followed him out on the porch and said, ''That will is wrong. That will make trouble and you should speak to Mr. Hendricks about it in one particular.'' Mr. Holmes informed her that he could not accept instructions from anyone except Mr. Hendricks. It appears, however, that upon the second visit a change was made in the will, though it did not involve the provisions concerning the bank

stock. After the will was read, Mr. Hendricks asked his wife if he should sign it and she said, "Yes." He thereupon signed the will. In explanation of her answer, Mrs. Hendricks testified:

"Q. Did it occur to you at the time that this [he] devised this stock, that that was in your name?

"A. It occurred that that was what he had reference to? This four thousand?

"Q. Yes.

"A. No, I thought that would automatically become mine at his death, and I didn't see why, in the first place, he would be doing that in the will. I thought he had stock in there besides.

"Q. Did you make any inquiry in regard to it?

"A. I didn't because Mr. Hendricks was a sick man and I didn't talk to him about those things."

The record shows that Mr. Hendricks did, in fact, have other stock in the United States National Bank which was no part of the one hundred shares standing in the name of himself and wife. Twenty-five additional shares had been issued to him on January 24, 1941, and stood in his name alone. Mr. Holmes, who drew the will, had no knowledge concerning the form in which the one hundred share certificate had been issued and there is no direct evidence that the particular matter was ever discussed at the time of the drawing or execution of the will.

Upon the facts as above set forth, our decision must rest. The plaintiff claims the right to retain and administer the stock in accordance with the trust provisions contained in the will. The defendant, Edward L. Hendricks, by his guardian, claims to be the owner of the stock, subject to the rights of Mrs. Hendricks to receive the income during her lifetime. Mrs. Hendricks claims to be the sole owner of the

stock by right of survivorship. For convenience, and without intending it as a legal conclusion, we shall in the ensuing discussion refer to the husband as the "donor" and the wife as the "donee."

Our first inquiry is whether the right of survivorship in personal property can be created by express words. In *Erickson v. Erickson*, 167 Or. 1, 115 P. (2d) 172, a deed was executed which provided that the two grantees "do not take the title in common, but with the right of survivorship." One grantee died and we held that the survivor took the land in fee. In that case the court considered the effect of the statutes of 1854 and 1855, now O. C. L. A. 70-108 and O. C. L. A. 70-205, and held that they do not prevent the creation of the right of survivorship in land if express words are employed to that end. In arriving at that conclusion, we did not apply the rule of the ancient common law which was to the effect that "where an estate was conveyed to two or more persons without any words indicating an intention that it should be divided among them, it was construed to be a joint tenancy, words or circumstances of negation being necessary to avoid such result." 33 C. J. 905. On the contrary, the decision rested upon the fact that the right of survivorship was affirmatively created by express words.

Joint tenancy at ancient common law was a favorite of the courts, being a product of the feudal system. *In re Hutchison's Estate*, 120 Ohio St. 542, 166 N. E. 687; 14 Am. Jur. 82. But with the disintegration of that system, the reasons for such favoritism disappeared. The ancient policy inherent in the law of joint tenancy has been abolished. Under the ancient rule, unjust and unintended results were reached when deeds containing no hint of the right of survivorship were executed

in favor of two grantees and when upon the death of one, contrary to the understanding of the parties, they were held to create technical joint tenancies with the "grand incident" of survivorship.

■ Under our statutes and decisions, a right of survivorship does not arise out of all instruments which would have created it at common law. The policy of the law has changed to this extent at least, that there has been a "shift from the earlier *constructional preference* of the common law for joint tenancies to the present *constructional preference* for tenancies in common." (Italics ours) 3 Restatement of the Law of Property 1445; *Erickson v. Erickson,* supra. We know of no rule of public policy hostile to the creation or enjoyment of a right of survivorship.

O. C. L. A. 70-108 is as follows:

TENANCY IN COMMON, WHEN DEED OR DEVISE CONSTRUED TO CREATE. "Every conveyance or devise of lands, or interest therein, made to two or more persons, other than to executors and trustees, as such, shall be construed to create a tenancy in common in such estate, *unless it be expressly declared in such conveyance or devise that the grantees or devisees shall take the lands as joint tenants.*" (Italics ours.)

■■ The italicized clause of the foregoing section abolishes the constructional rule of the common law and to that extent, at least, changes the law of joint tenancy, but it still authorizes the employment of express words to avoid an undesired interpretation of the instrument as creating a tenancy in common. Whatever may be the rule in other cases in which a conveyancer employs only such words as "joint owners" or "joint tenants" without adding "and to the survivor" or

equivalent words, there can be no question in the case at bar for here the donor employed express words which unequivocally described the right of survivorship and he thereby avoided the constructional preference in favor of a tenancy in common. We need not decide whether the words "joint owners" or "joint tenants" are words of art which, when employed without more in a conveyance, would be deemed to have "expressly declared" that the right of survivorship should exist, for that question is not before us, but see *In re Hutchison's Estate,* supra, and *State Bank and Trust Co. v. Nolan,* 103 Conn. 308, 130 A. 483.

In *Stout v. Van Zante,* 109 Or. 430, 219 P. 804; 220 P. 414, this court held that the statutes (O. C. L. A. 70-108 and O. C. L. A. 70-205) which were construed in the Erickson case apply to personal property as well as real. This conclusion was certainly not reached by mere inspection of those statutes, both of which expressly refer to real property. The court also cited and relied upon cases which held "that the rules governing estates or interests in lands, whether founded upon statutes or upon general principles of law, should, as far as practicable, be applied to estates or interest of a like character in personal property."

■ The rules concerning real property were applied to personalty by analogy. Since now it is established that the right of survivorship in land may be created by express words notwithstanding the statutes, the very authority quoted in Stout v. Van Zante admonishes us to apply the same rule in the case of personal property. Such was the direct holding of this court in the well considered case of *Beach v. Holland,* 172 Or. 396, 142 P. (2d) 990, where it is said, "Under this principle the rule of the Erickson case must be held to apply

with equal force to personal, as to real, property.'' *Beach v. Holland* definitely establishes that our first question must be answered in the affirmative.

■■ Since the right of survivorship in personal property may be created by express words, we must next consider whether the parties to this case by their conduct have created a right of survivorship in Mrs. Hendricks. It is clear, as contended by the plaintiff executor, that the transaction did not constitute a gift *causa mortis. Allen v. Hendrick,* 104 Or. 202, 206 P. 733. Nor is there any evidence of an intent to create a trust for the benefit of Mrs. Hendricks. 24 Am. Jur. 737.

■ Taking the stock in the names of husband and wife would not create a tenancy by the entirety for such tenancies in personal property are not recognized in this state. *Alexander v. Alexander,* 154 Or. 317, 58 P. (2d) 1265; *Holman v. Mays,* 154 Or. 241, 59 P. (2d) 392; *Nunner v. Erickson,* 151 Or. 575, 51 P. (2d) 839; *McInnis v. Atlantic Investment Corporation,* 137 Or. 648, 3 P. (2d) 118, 4 P. (2d) 314; *Stout v. Van Zante,* supra.

■ If the title of Mrs. Hendricks as survivor is to be upheld, it must be by virtue of a gift *inter vivos.* Among the essential elements of such a gift are the following: There must be a donative intent that a gift go into immediate and absolute effect with nothing left undone; there must be delivery with the transfer of possession and dominion over the subject of the gift; and there must be acceptance by the donee. *Beach v. Holland,* supra; *First National Bank of Portland v. Connolly,* 172 Or. 434, 138 P. (2d) 613; *Lay v. Proctor,* 147 Or. 545 at 560, 34 P. (2d) 331 at 337; *Grignon v. Shope,* 100 Or. 611, 197 P. 317.

■ There is uncontradicted oral evidence tending to indicate that the stock was transferred with a dona-

tive intent but we consider the written instruments decisive on that issue. As appears from the previous statement of facts, the donor endorsed in blank the four certificates of which he was the owner and caused them to be transmitted to the corporation with instructions to cancel and reissue them to the donor and donee. Such an endorsement in blank accompanied by such instructions authorized the transfer clerk of the bank to fill in the blanks as agent of the donor. This was done with the result that the endorsement which had been in blank became a completed conveyance over the signature of the donor. It read: "* * * do bargain, sell, assign, transfer and deliver to Edward D. Hendricks and Margaret M. Hendricks * * *." Thereafter the original shares thus transferred were cancelled and a single new certificate issued certifying "that Edward D. Hendricks and Margaret M. Hendricks, and upon the death of either, the survivor of either, is owner * * *." Perhaps out of caution on the part of the legal staff of the corporation, the words "joint owners" which appeared in the donor's instructions were not inserted in the new certificate. Instead, the bank employed the standard form used by it when a right of survivorship is intended. The words so used indicated two things as clearly as is humanly possible: First, that both the donor and donee were present owners of the certificate; and second, that the survivor would become the sole owner. Upon delivery of the stock, the donor signed the required receipt and accepted the certificate as prepared and submitted by the corporation. He thereby ratified the acts of the various agents engaged in the transfer. *Eisenhardt v. Lowell*, 105 Colo. 417, 98 P. (2d) 1001.

It is fully recognized that there may be transfers of personal property in which the conduct of the parties, or the language of a written instrument may fail clearly to manifest a transfer of a present interest in the property, or a donative intent and in any such event, the surrounding circumstances and statements of the parties may become material. Such was the case in *Beach v. Holland,* supra, but in that case, referring to agreements which recite that property shall be owned "jointly with right of survivorship," the court said: "Language of that character definitely determines the question of intent * * *."

Upon this point, the well considered case of *Matthew v. Moncrief,* 77 U. S. App. D. C. 221, 135 F. (2d) 645 (1943), has an important bearing. The case involved a joint savings account. The suit was brought by the heirs of Mary J. Davidson against her sister who claimed to be the owner of the account by right of survivorship. For convenience, we shall refer to Mary J. Davidson as the donor, and her sister, the defendant, as donee.

The complaint stated that the donor and the donee went to the bank together and the donor transferred her funds to a joint account. A form was executed by them both, reciting that the "account should belong * * * as joint owners subject to the order of either, with the balance at the death of either to the survivor." Both women signed the instrument. After setting forth the contents of the writing, the complaint further alleged that the transaction was without donative intent and was an arrangement solely for the convenience of the donor which was understood by both women. The complaint then alleged that upon the death of the donor, the donee converted the fund.

Upon the basis of these allegations the heirs of the donor sought to establish their right to the fund.

The case arose upon motion (in the nature of a demurrer) to dismiss the complaint. After a careful analysis of many cases, the court said:

"* * * In many of these decisions, the expressed rationale has been that the deposit card is a contract or novation between the bank and both depositors, and that the donee-survivor takes not only as donee, but under the binding agreement negotiated between the bank and himself. In other cases the transfer has been treated simply as a gift. Under either view, however, the courts have agreed that the question of the intention of the donor is material, but they have held that when such intention is expressed in a written instrument which says, in plain terms, that the deposit is the joint property of both, and that it is to go upon the death of either to the survivor, such an expression of intention is conclusive, and preclusive of all parol contradiction, except upon the grounds of fraud or mistake. We believe this to be a proper application of the parol evidence rule.

* * *

"The complaint shows that a contract was signed by both donor and donee with the Perpetual Building Association; that the words of the contract expressed a clear and unequivocal intention in the donor to make the donee a joint owner; and that a clause of survivorship was included in the instrument. The complaint does not allege fraud or mistake in the execution of the joint agreement. We cannot, under these circumstances, allow Mrs. Davidson's clearly written and plainly expressed purpose to be rewritten after her demise, or deprive the appellee of rights in a contract to which she was party-signatory. Accordingly, we hold that the District Court rightly considered that the appellants' complaint did not state a cause of action."

*Matthew v. Moncrief,* supra. To the same effect see *Holt v. Bayles,* 85 Utah, 364, 39 P. (2d) 715; 5 Michie, Banks and Banking 99, § 46.

There is, of course, a distinction in fact between *Matthew v. Moncrief* and the case at bar. In the Matthew case both the donor and donee signed an instrument contractual in form at the inception of the deposit, whereas the only instrument jointly executed by the donor and donee in the case at bar was the receipt for the stock certificate. As supporting the doctrine of *Matthew v. Moncrief,* see also *Illinois Trust and Savings Bank v. Van Vlack,* 310 Ill. 185, 141 N. E. 546; *In re Kellogg,* 41 Cal. App. (2d) 833, 107 P. (2d) 964.

Other well considered cases appear to hold that the question of donative intent is not conclusively established by the employment of words creating a joint account with express right of survivorship. While recognizing the persuasive and frequently the decisive effect of the words of the written instrument, they do. not invoke the parol evidence rule as barring extrinsic evidence of donative intent. *Trenton Savings Fund Society v. Byrnes,* 110 N. J. Eq. 617, 160 A. 831; *Olshan v. East New York Savings Bank,* 28 F. Supp. 727; *Ball v. Forbes,* 314 Mass. 200, 49 N. E. (2d) 898.

In view of the conflict of authority to which attention has been directed, we express no opinion as to the controlling effect of the parol evidence rule. Aside from any rule of law concerning the admissibility of extrinsic evidence of donative intent, we find in the written instruments convincing proof of the existence of such intent.

■ It appears that two years after the stock transaction was completed the donor, by his will, attempted a

different disposition of the stock. In a case in which parol evidence on the issue of donative intent is admissible, it may well be that evidence of the alleged donor's conduct after the date of the purported gift would merit consideration, but it could be relevant only for such retrospective bearing, if any, as it might have upon the question of the donor's intent at the time of the alleged gift. His intent subsequent to that time would, as such, be immaterial. ''It is elementary that the validity of a gift is to be determined by conditions then existing and not by what may happen at a subsequent date.'' *Poe v. State Treasurer,* 144 Or. 561, at p. 570, 25 P. (2d) 924; *Reiley v. Fulper,* 93 N. J. Eq. 112, 115 A. 661.

▮ Assuming, but not deciding, that evidence of the contents of the will was relevant upon the question of the donor's intent two years previously and was admissible, still we find such evidence wholly insufficient to overcome the convincing effect of the instruments executed at the time of the stock transaction.

As in the case of *Beach v. Holland,* we agree that the language employed in the written instruments involved in the case at bar definitely determines and establishes donative intent. The form of the stock certificate expressly creating the right of survivorship is inconsistent with the idea that the transaction was merely for the convenience of the donor and it certainly tends to negative the idea that any trust was intended.

▮ It is contended that there was no sufficient evidence of an unconditional delivery and surrender of dominion over the subject of the gift; but the execution of the joint receipt constitutes evidence of delivery to and acceptance by both. In a recent case, this court

found evidence of intent to make a gift of corporate stock. As to the sufficiency of the evidence of delivery, we said:

"* * * Here, the transfer was made by delivering up his own certificates and having new certificates issued to the donees in lieu thereof. Therefore, the transfer of the stock was rightfully made and completed, and vested in the transferees the legal title to the stock. For that reason, a manual delivery of the newly issued stock was not necessary to complete the gift." *Simonton and Prichard v. Dwyer,* 167 Or. 50, 115 P. (2d) 316; See also *Phillips v. Plastridge,* 107 Vt. 267, 179 A. 157, 99 A. L. R. 1074; *In re Hutchison's Estate,* supra; *Eisenhardt v. Lowell,* supra.

 The Simonton case also establishes that the acceptance of a gift of a beneficial nature is presumed. Under the facts of the instant case we consider it immaterial that the donor retained physical custody of the certificate after both had receipted therefor. Unlike the case of a savings bank book, presentation of which may be required on the withdrawal of funds, the physical custody of the stock certificate would not give the donor dominion over the stock for it was transferable only upon the signature of both.

"Delivery of the passbook with donative intent no doubt constitutes delivery of a savings deposit (24 Am. Jur., Gifts 785, § 104) ; but it is established by numerous decisions and conceded by counsel for defendant that, where a joint bank account is created, accompanied by an agreement such as that signed by the plaintiff and the deceased in this case, retention of the passbook by the donor is not controlling as against the claim of a gift in praesenti, though it may be considered upon the question of whether there was a donative intent." *Beach v. Holland,* supra.

In the case at bar, as we have said, the form of the instrument established donative intent and the rule of *Beach v. Holland* to the effect that the retention of a passbook is not controlling applies with far greater force to the retention of a stock certificate. We conclude that the evidence clearly establishes the consummation of a gift *in praesenti,* being a gift effected through the instrumentality of the contract between the corporation and Mr. and Mrs. Hendricks.

Although the reasoning in the various opinions is not always harmonious, the following decisions do, nevertheless, support the conclusion which we have reached: *Beach v. Holland,* supra, and cases therein cited; *In re Edwards' Estate,* 140 Or. 431, 14 P. (2d) 274, (bank deposit); *In re Winkler's Estate,* 232 Iowa 930, 5 N. W. (2d) 153, (bank deposit); *Phillips v. Plastridge,* supra, (stock); *In re Hutchison's Estate,* supra, (tenancy in common in stock with right of survivorship); *Lewis v. Baldwin,* 11 Ohio 352, (land); *Graham v. Barnes,* 259 Mass. 534, 156 N. E. 865, (owner of bonds intended to create joint ownership. He and the donee agreed to a deposit of them in their joint names. Held the survivor takes all. It does not appear that the survivorship was created by express words.); *Eisenhardt v. Lowell,* supra; *Houghton v. Brantingham,* 86 Conn. 630, 86 A. 664; *Jones v. Waldroup,* 217 N. C. 178, 7 S. E. (2d) 366; *Montgomery v. Keystone Savings and Loan Association,* 150 Pa. Super. 577, 29 A. (2d) 203, (savings and loan stock with right of survivorship); *Holt v. Bayles,* supra, (parol evidence rule discussed); *Moskowitz v. Marrow,* 251 N. Y. 380, 167 N. E. 506, 66 A. L. R. 870, (bank deposit); *Stephens v. Stephens,* 193 Miss. 98, 8 So. (2d) 462, (bank deposit); *Bennett v. Ben-*

*nett*, 70 Ohio App. 187, 45 N. E. (2d) 614, (bank deposit).

■ It is alleged in the answer of Edward L. Hendricks "that at the time the said will was made the said Margaret M. Hendricks had full knowledge thereof and all was understood by her and the said Margaret M. Hendricks should now be estopped from claiming to be the owner of said stock." We have set forth the evidence upon which the claim of estoppel is based, but are of the opinion that neither the pleading nor the proof is sufficient to support an estoppel.

The plaintiff relies upon the case of *Southern Industrial Institute v. Marsh,* 15 F. (2d) 347. In that case Marsh, who was the owner of corporate stock, caused his certificate to be cancelled and a new certificate issued in the name of Southern Industrial Institute, but the very instructions which authorized the transfer also directed the corporation to return the reissued stock to him. There was oral evidence that Marsh had stated that he wanted to make delivery in person and at the time of delivery he intended to require a written agreement from the Institute, securing to himself the income from the stock during his lifetime. The stock was reissued in the name of the Institute and returned to Marsh. The donee never saw, and of course never receipted for, the stock as in the case at bar. The oral evidence clearly showed that the donor did not intend to deliver or surrender control until a later time and then only on condition. It was also held that, notwithstanding the issuance of the shares in the name of the Institute, it was still within the power of the donor to have the stock retransferred to himself without the consent of the Institute. It was therefore held that there was no suffi-

cient delivery. Parol evidence rule was not discussed. Upon the issue of delivery the case is out of harmony with our decision in *Simonton and Prichard v. Dwyer,* supra. On the issue of donative intent it is distinguishable from the case at bar.

Plaintiff also cites *Getchell v. Biddeford Bank,* 94 Maine 452, 47 A. 895, 80 Am. St. Rep. 408. That case closely resembles the *Southern Industrial Institute v Marsh,* supra. Neither case involved any right of survivorship. With his own money, one Moore purchased bank stock and caused the certificates to be made out in the name of his wife. He retained the certificates in his own name. His wife had no knowledge of the transaction. The wife died and Moore surrendered the certificates to the bank and secured new ones in his own name. It was held that there was no completed delivery of the stock, and that Mr. Moore was the owner. It was recognized, however, that even if the strict legal title to the property had passed to Mrs. Moore, the beneficial ownership would, under the evidence, have remained in her husband. The court expressly refrained from considering "what would have been Mrs. Moore's right in this property after the death of her husband had she survived him, for she did not survive him." The clear creation in the case at bar of stock ownership in two persons with the express right of survivorship is inconsistent with any idea of a resulting trust as suggested in the Getchell case and the ruling in the latter case that there was no delivery is inconsistent with *Simonton and Prichard v. Dwyer,* supra.

Plaintiff also relies upon *Stevenson v. Earl,* 65 N. J. Eq. 721, 55 A. 1091, 103 Am. St. Rep. 790, 1 Ann. Cas. 49. In that case a bank deposit stood in the name of the

husband only, but rules of the depositary required that the depositor give the name of the person to whom the money should be paid in the event of his death. He designated his wife as such person, delivered the passbook to her and told her that if he died the money should go to her. This was not a case of an account in joint names with the right of survivorship. The account stood in the husband's name only and he retained full control of the deposit. It was held that the gift was testamentary in character and therefore invalid.

A similar case of some importance not cited by either party is *Decker v. Fowler,* 199 Wash. 549, 92 P. (2d) 254, 131 A. L. R. 961. One Marino purchased United States savings bonds which were issued under regulations promulgated by the United States Treasury Department. Each bond read as follows:

"The United States of America for value received promises to pay to Mr. Charles A. Marino, payable on death to Mrs. May Decker."

The bonds were not transferable and no substitution could be made for the person named therein as beneficiary. They were payable at the option of the owner prior to maturity. Upon the death of Marino it was held that his administrator was entitled to a judgment directing Mrs. Decker to collect the money on the bonds from the federal government and turn it over to the administrator. This form of certificate did not purport to create a present ownership in both parties. The proceeds of his bond were payable to her if he died, not as the result of any joint ownership or right of survivorship, but because she was the designated payee in the event of his death. This

case is to be distinguished from the case at bar because of the essential difference in the wording of the certificates.

*Noyes v. Institution for Savings,* 164 Mass. 583, 42 N. E. 103, 49 Am. St. Rep. 484 (1895), involved a bank deposit in the names of two, payable to either or the survivor. The nondelivery of the passbook was apparently considered conclusive as against the claim of a present gift. It is out of harmony with the rule established in this state by *Beach v. Holland,* supra.

Finally, the plaintiff cites *In the Matter of Albrecht,* 136 N. Y. 91, 32 N. E. 632, 18 L. R. A. 329, 32 Am. St. Rep. 700, (1892); and *Wait v. Bovee,* 35 Mich. 425, (1877). In the Albrecht case husband and wife each invested an equal amount in a bond and mortgage which was executed to them as payees. No words of survivorship appear to have been used. It was held that upon the death of either, the interest of the deceased would pass to his personal representative. This case merely supports the rule of constructional preference for tenancy in common. *Wait v. Bovee* is of a similar nature.

We hold that a right of survivorship in personal property, including corporate stock, may be created by express words, that such a right was created in the case at bar and that Margaret M. Hendricks is the owner of one hundred shares of the capital stock of the United States National Bank of Portland and of the accrued dividends thereon, such stock being represented by certificate No. X2946.

The decree of the circuit court is therefore affirmed.