Argued and submitted July 13, 1984, affirmed January 23, reconsideration denied
March 8, petition for review denied December 10, 1985 (300 Or 367)

# GILBERT,
*Respondent,*

*v.*

# BROWN et al,
*Appellants.*

## (83-0140; CA A30466)

693 P2d 1330

Michael G. Cowgill, Albany, argued the cause for appellants. With him on the briefs were Weatherford, Thompson, Brickey & Powers, P.C., Albany.

J. Ray Rhoten, Salem, argued the cause for respondent. With him on the brief were Rhoten, Rhoten & Speerstra, Salem.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

Defendants appeal a judgment that plaintiff owns ten bonds, the coupons and the coupon proceeds and that defendant personal representatives hold those items in trust for her. The bonds were each $5,000, unregistered bearer bonds denominated The Port of Portland, Industrial Development Revenue Bonds, 1980 series (Hayden Island, Inc. Project), maturing December 1, 1989. The bond coupons are payable on June 1 and December 1 of each year. The amount of interest accruing semiannually on the bonds is $2,312.50. We affirm.

Plaintiff is the widow of Joe L. Gilbert, who died in 1982. Helen Jo Brown is the only surviving child of the decedent. She and her husband, John A. Brown, are defendants and the personal representatives of the decedent's estate. Helen Jo Brown and the remaining defendants, other than John A. Brown, are beneficiaries under the will.

Before filing the action, plaintiff filed a claim for the bonds with the personal representatives, who disallowed her claim. Plaintiff asserted that she owned the bonds, coupons and proceeds but that the personal representatives had possession of them. The court tried plaintiff's action as an equitable matter and imposed a constructive trust on those items for her benefit. We review *de novo*. ORS 19.125(3).

Plaintiff and the decedent were married on December 29, 1977. Just before their marriage they executed an antenuptial agreement that provides:

> "All property acquired by husband or wife, or both of them, after solemnization of the marriage, whether real or personal, shall be owned by them jointly or severally as agreed by them and as provided by the instrument of acquisition or conveyance to them, or instruments or conveyances between them, including all rents, issues, profits, substitutions for and proceeds of said property."

On June 27, 1980, they opened an account at the Salem brokerage office of Shearson Hayden Stone, Inc. (Shearson). The account application shows that plaintiff and decedent opened a brokerage account in the name of "Joseph L. Gilbert and Irene L. Gilbert JT TEN." Each signed the account application. It designated the initial transaction as the purchase of "50 Hayden Is. BD." The account application

stated, "If you wish to have a joint account with rights of survivorship (when one dies his interest passes to the survivor(s)), STRIKE OUT PARAGRAPH (b)," and provides:

> "If instead, you desire to have an account as Tenants-in-Common without rights of survivorship (when one dies, his interest passes to his estate), STRIKE OUT PARAGRAPH (a) and FILL IN PARAGRAPH (b) indicating names and percentage amounts of the interests of each tenant. (The only names to be inserted are those of the present owners of the account. Heirs or beneficiaries CANNOT be designated on this form.)"

Plaintiff and decedent struck paragraph (b). They did not strike the paragraph headed "Paragraph (a) Joint Tenants with Rights of Survivorship" that provides:

> "It is the express intention of the undersigned to create an estate or account as joint tenants with the right of survivorship and not as tenants in common. In the event of the death of either or any of the undersigned, the entire interest in the joint account shall be vested in the survivor or survivors on the same terms and conditions as therefore held, without in any manner releasing the decedent's estate from the liability provided for in the next preceding paragraph."[1]

The account statement shows that on August 22, 1980, Shearson received $50,000 for the bonds and $950.69 for the purchase commission. The decedent paid for the bonds and the commission from his own funds, and the bonds were listed in the account. Plaintiff did not pay anything.

Plaintiff testified:

> "A. Well, we talked it over about the bonds. And Joe and I talked about buying the bonds as a gift. And then we went down. We made an appointment and went down.
>
> "Q. Where did you go?
>
> "A. We went to Shearson's in Salem.
>
> "Q. And when you signed that, what was the conversation about those bonds; who they were to belong to?
>
> "A. Well, they were for if anything happened to Joe, I

---

[1]The "Declaration of Nonresidency in New York State," which both plaintiff and the decedent also signed, included the recitation that "in a case of joint ownership of securities, no one of the joint owners may be a resident" of New York state.

would receive 'em, or if anything happened to me, Joe would receive them.

"Q. And was there other conversation about the ownership of those bonds?

"A. Well, he said they were ours."

"Q. And what's the basis of your claim?

"A. Well, they are in our joint names. And Joe bought those bonds—we bought them for gift. If anything happened to Joe, I would get them. If anything happened to me, he would get them."

Shearson received the bonds for the account some time before October 1, 1980, after which it delivered the bonds by mail to plaintiff and the decedent. Plaintiff testified:

"Q. Now, after you acquired those bonds, were they delivered to you folks?

"A. Yes, sir.

"Q. How? Sent in the mail? Did you go get 'em?

"A. I can't remember exactly, but I think they were sent in the mail. Registered, probably.

"Q. Now, what happened to those bonds after you got delivery?

"A. Joe took them down to Warren Gill's office."

The purchase and delivery of the bonds was the only transaction that plaintiff and the decedent, or either of them, conducted through the Shearson account.

After receiving the bonds from Shearson, and before December 1, 1980, the decedent delivered the bonds to the law office of Warren Gill, his attorney in Lebanon,[2] who was not in his office when the decedent delivered the bonds. The decedent handed them to Francis Rice, Gill's secretary, and stated, "Here are my Port of Portland bonds. I want you to put them in your safe." The bonds remained in the office safe until after the decedent's death.

Gill was unable to contact the decedent on December 1, 1980. He clipped the ten coupons due that date and

---

[2] Gill also did some legal work for plaintiff before the decedent's death. He drafted her will and wrote a contract for the sale of her mobile home.

deposited the proceeds in an account that the decedent maintained at First Interstate Bank under the name of "Helen Jo Brown, et al." The decedent deposited the proceeds due June 1, 1981, and December 1, 1981, in the same account. He deposited the proceeds due June 1, 1982, in his individual checking account at First Interstate Bank.

Rice testified that on several occasions the decedent told her that, after his death, "[The bonds] are Helen Jo's." Gill testified that the decedent told him that he wanted to use the bonds to pay inheritance taxes and that after his death the bonds were to be delivered to Helen Jo and would belong to her. Gill testified that decedent frequently referred to the bonds as "mine" and "These are mine. Give them to Helen Jo." Both Helen Jo and her husband testified that the decedent had told each of them that, if anything should happen to him, the bonds belonged to Helen Jo.

Plaintiff did not see the bonds after the decedent delivered them to Gill's office. She did not discuss them again with the decedent, or talk about the bonds with Gill, his secretary, Helen Jo Brown or John Brown before the decedent's death.

The court stated that it was

"the Court's determination and finding that the nature of the ownership of these bonds was established when they were bought. They were owned with rights of survivorship and there's not been a sufficient showing of any change.

"That the bonds rested in Mr. Gill's office is not determinative of the issue in this case, and if the case is examined in terms of interest, the Court accepts the testimony of the plaintiff that there was a donative intent for an inter vivos gift at the time of the purchase of the bonds."

The judgment provides that the court:

"Finds generally for the plaintiff that the gift of the Port of Portland, Hayden Island bonds was and is an inter vivos gift, and determines that defendants, Helen Jo Brown and John A. Brown, as Personal Representatives of the Estate of Joe L. Gilbert, Deceased, should deliver the bonds and remaining coupons and the proceeds of the coupons cashed by them, and pay interest on the proceeds of the coupons cashed, to the plaintiff, now, therefore

"* * * * *

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the plaintiff is the owner of Port of Portland, Industrial Development Revenue, 1980 Series, (Hayden Island) Bonds Nos. 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, together with all coupons or the proceeds of all coupons becoming due on and after December 1, 1982, and defendants, Helen Jo Brown and John A. Brown, Personal Representatives of the Estate of Joe L. Gilbert, Deceased, are ordered to deliver such to the plaintiff.

"IT IS FURTHER ADJUDGED AND DECREED that the defendants, Helen Jo Brown and John A. Brown, Personal Representatives of the Estate of Joe L. Gilbert, Deceased, are declared to hold and to have held such bonds and coupons and the proceeds of cashed coupons in trust for the plaintiff.

"IT IS FURTHER ADJUDGED that the plaintiff have and recover judgment against the defendants, Helen Jo Brown and John A. Brown, as Personal Representatives of the Estate of Joe L. Gilbert, Deceased, for the sum of $2,312.50 on account of proceeds of the coupons due December 1, 1982, together with interest thereon at the rate of 9% per annum from December 1, 1982, and for the further sum of $2,312.50 on account of coupons on such bonds due June 1, 1983, together with interest thereon at the rate of 9% per annum from June 1, 1983."

Defendants assign as errors that the court (1) denied their motion at the close of plaintiff's case for judgment of involuntary dismissal with prejudice; (2) found that decedent made an *inter vivos* gift to plaintiff of the bonds and coupons at the time of the purchase; and (3) declared that defendant personal representatives held the bonds, coupons and proceeds in a constructive trust for plaintiff and ordered them to deliver them to plaintiff.

Defendants do not claim that, whatever interest in the bonds was established by the transactions at Shearson in mid-1980, the bonds belong to defendants because they are bearer bonds, were held by Gill for the decedent and were in Gill's possession at the time of the decedent's death. Neither do defendants assert that plaintiff and the decedent created a joint tenancy under ORS 105.920, that the decedent severed it by his actions after the bonds were purchased and that at the decedent's death he owned a 50 percent interest in the bonds as a tenant in common. They also do not claim that the coupons or coupon proceeds should be held differently from

the bonds. What they do assert is that the evidence is not clear and convincing that the decedent intended on June 27, 1980, to make an immediate and absolute gift to plaintiff or that he delivered the bonds to plaintiff. *See Johnson v. Steen,* 281 Or 361, 575 P2d 141 (1978); *Carpenter v. Carpenter,* 153 Or 584, 601-02, 56 P2d 305, 57 P2d 1098, 58 P2d 507 (1936). They also assert that his conduct and statements subsequent to the purchase of the bonds show that, at the time of purchase, he did not make a valid *inter vivos* gift of the bonds to plaintiff.

■ Initially, defendants assert that the court may not rule for plaintiff after the personal representatives disallowed her claim, because, other than claimant's testimony, there was no competent, satisfactory evidence of the decedent's donative intent. ORS 115.195 provides:

> "A claim that has been disallowed by the personal representative may not be allowed by any court except upon some competent, satisfactory evidence other than the testimony of the claimant."

Although plaintiff filed a claim for the bonds with the personal representatives and it was disallowed, it was not a "claim" within the meaning of ORS 115.195. *See Willbanks v. Goodwin,* 70 Or App 425, 689 P2d 1004 (1984). The statute does not apply here. The court could consider plaintiff's testimony in determining whether she had established a *prima facie* case. Plaintiff testified that she and the decedent discussed the bonds before their purchase and jointly arranged for their purchase through Shearson. Plaintiff testified that the decedent told her that the bonds were bought as a gift, that they were "ours" and "if anything happened to Joe, I would get them" and "if anything happened to me, he would get them." Her other evidence also supports her testimony. That evidence included the account statement which refers specifically to the bonds, and the account application, which identifies plaintiff and the decedent as joint tenants and recites that it is the "express intention of the undersigned to create an estate or account as joint tenants with the right of survivorship and not as tenants in common." Shearson delivered the bonds to plaintiff and the decedent by mail. *See Manning v. U. S. Nat. Bank,* 174 Or 118, 148 P2d 255, (1944); *Simonton and Pritchard v. Dwyer,* 167 Or 50, 115 P2d 316 (1941).

■ Moreover, even without plaintiff's own testimony,

she established a *prima facie* case. It included the antenuptial agreement, the account application, the account statement and the testimony of Helen Jo Brown that, at the time of the action, she had possession of the bonds. The antenuptial agreement provides that property that plaintiff and the decedent acquired after their marriage "shall be owned by them jointly or severally as agreed by them and as provided by the instrument of acquisition * * *, including all * * * proceeds of said property." The account application discloses the signed agreement of plaintiff and the decedent that, when the bonds were purchased, they, the coupons and the proceeds of those coupons were to be jointly owned. The account statement shows that the bonds were purchased in August and subsequently placed in the joint account. No evidence suggests that the intent manifested on opening the account on June 27, 1980, had changed by the times of purchase of the bonds in August and subsequent delivery of the bonds into the account. Indeed, the evidence is to the contrary and establishes *prima facie* intent, delivery and acceptance. The trial court did not err in denying defendants' motion for involuntary dismissal.

■    We also hold that the court did not err when it found that there was an *inter vivos* gift to plaintiff of a joint interest with right of survivorship in the bonds at the time when they were purchased. The decedent's conduct and statements subsequent to the purchase of the bonds do not negate the clear and convincing evidence that he intended to and did make a gift to plaintiff at the time the bonds were purchased. *See Allen v. Allen,* 275 Or 471, 479, 551 P2d 459 (1976); *Manning v. U.S. Nat. Bank, supra.*

■    The evidence shows that, when plaintiff and the decedent executed the account application, they intended to create the type of co-ownership interest in the bonds with right of survivorship described in *Holbrook v. Holbrook,* 240 Or 567, 403 P2d 12 (1965); *Halleck v. Halleck,* 216 Or 23, 337 P2d 330 (1959); *Manning v. U. S. Nat. Bank, supra;* and *Beach v. Holland,* 172 Or 396, 142 P2d 990 (1943). By enacting ORS 105.920 in 1975, the legislature did not intend to bar creation of the form of joint tenancy in personal property with right of survivorship that previously existed in Oregon. ORS 105.920 does not provide that the form of ownership it authorizes is the exclusive form of co-ownership of personal property with

right of survivorship, *see Sautter v. Coffey,* 283 Or 303, 584 P2d 245 (1978), and it is not.

■     Accordingly, the court also did not err when it ruled that defendant personal representatives hold the bonds, coupons and proceeds in constructive trust and must deliver them to plaintiff.

Affirmed.