Argued October 17, affirmed December 3, 1952

WINDLE, as Adm'x et al *v.* FLINN et al

251 P. 2d 136

*James C. Dezendorf* and *William F. Lubersky,* of Portland, argued the cause for appellants. On the briefs were Koerner, Young, McColloch & Dezendorf, William F. Lubersky and James H. Clarke, of Portland.

*Will H. Masters,* of Portland, argued the cause for respondents. On the brief were Masters & Masters.

Before BRAND, Chief Justice, and ROSSMAN, LUSK, LATOURETTE and WARNER, Justices.

WARNER, J.

Mary M. Windle, the appellant, is impleaded as a party plaintiff in two different capacities: (1) as the administratrix of the estate of J. E. Windle, her deceased husband, and (2) in her individual capacity. The status of Mildred Windle Flinn, Jeanette Windle Andrews, June Windle Stout and Carmen Windle of the defendants-respondents is not disclosed by the complaint nor is any relief requested for or against either of them. The defendant-respondent, Will H. Masters, trustee, is alleged to be the trustee under the purported instrument which occasions this litigation. All of the defendants successfully demurred to plaintiffs' complaint on the ground that it did not state sufficient facts to constitute a cause of suit. A first amended complaint was thereafter filed; but before the defendants made any plea to the same, the plaintiffs, on leave of court, filed a second amended complaint. The defendants demurred to this third pleading upon the same ground, with like result. Upon plaintiffs' refusal to seek an opportunity to plead further, the suit was dismissed. From the order of dismissal, the plaintiffs appeal.

The ultimate and only question for determination is whether the court erred in dismissing the suit as framed by the second amended complaint.

The last amended complaint alleges:

"I

"That J. E. Windle died intestate in Multnomah County, Oregon on the 19th day of September 1943 and was at the time of his death a resident of the

County of Washington, Oregon being temporarily in Portland, Oregon for hospitalization, and that the plaintiff Mary M. Windle is the duly appointed, qualified and acting administratrix of the estate of the said J. E. Windle, deceased, under and by virtue of letters of administration duly issued to her out of the County Court of the State of Oregon for the County of Washington and is duly authorized and directed by order of the said County Court to prosecute this suit as such administratrix.

"II

"That said plaintiff Mary M. Windle in her individual capacity is the widow of said J. E. Windle, deceased, with whom she intermarried on the 22nd day of February 1918 and at all times thereafter until the death of said J. E. Windle, was his lawful wife.

"III

"That at the time of the death of the said J. E. Windle, deceased, there were a number of judgments of record against him in the Circuit Court of the State of Oregon for the County of Multnomah as follows:

State of Oregon vs. J. E. Windle dated December 20, 1938—$36.42

Lowell Mortgage & Adjustment Co. vs. J. E. Windle dated October 20, 1939—$4,000.00 and costs $880.00.

State of Oregon vs. J. E. Windle dated June 26, 1940—$6.52.

United States vs. J. E. Windle dated April 25, 1942—$3,771.59.

Mary Myrl Windle vs. J. E. Windle dated April 25, 1942—$1,000.00.

and also thirteen judgments of record in the District Court of the State of Oregon for Multnomah County, certain of which are also against this plaintiff in her individual capacity and which render it difficult for her to retain employment which is very essential as she is without funds.

## "IV

"That since the death of the said J. E. Windle and the appointment of plaintiff as administratrix of his estate the following claims have been presented against his estate, all of which have been examined and approved by said administratrix, as follows:

Dr. Dorothy M. Johnstone $ 840.00
Portland Sanitarium 229.30
Dr. Chester O. Nugent 154.00
Collector of Internal Revenue 4,752.18

"In addition to the above claims plaintiff, as surviving spouse of said deceased, has been granted a family allowance of $2,400.00 by the said County Court.

## "V

"That there is no money or other property which can be reached by plaintiff administratrix for the purpose of paying the claims against the estate of the said J. E. Windle, deceased, or the expenses of the administration thereof and it will be necessary for plaintiff administratrix to acquire possession of and to sell any property belonging to said estate for the purpose of raising funds with which to pay the just debts of said decedent and the expenses of administration of his estate.

## "VI

"That prior to and at the time of his death, said J. E. Windle was the owner of, and exercised full control and management of and enjoyed the income and benefits from all property carried in the name of the Oregon Realty Co., although said property purportedly was held under the terms of a certain Trust dated March 4, 1938 whereby the capital stock of Oregon Realty Co. was assertedly transferred to defendant Will H. Masters as Trustee.

## "VII

"That on or about March 4, 1938 at the time of the execution of said purported Trust, the said

J. E. Windle was living with a woman other than plaintiff; that he had been unsuccessful in persuading plaintiff to grant him a divorce and was himself preparing to bring a divorce action against plaintiff.

"VIII

"That subsequently on July 19, 1939 said J. E. Windle filed suit for divorce against plaintiff in Multnomah County, and after trial on the merits said suit was dismissed on April 24, 1942 and plaintiff was awarded alimony of $75.00 per month, $250.00 costs and $750.00 attorneys' fees, no part of which award has been paid. On January 8, 1943, plaintiff filed suit for divorce against said J. E. Windle in Multnomah County, which suit was pending at the time of the decease of said J. E. Windle.

"IX

"That said purported Trust Agreement of March 4, 1938 was the final and culminating step in a series of purported trusts entered into by said J. E. Windle or on his behalf in furtherance of a fraudulent and *mala fide* scheme designed to vest and retain in the said J. E. Windle the control, management and fruits of his property, while at the same time to divest the rights of his creditors and in particular the rights of the plaintiff as his wife against his income and property either for support, maintenance or alimony or as surviving spouse upon his death.

"X

"That under said purported Trust of March 4, 1938 the active and direct management and control of said Oregon Realty Co. and of the properties held in the name of said corporation were vested and retained in the said J. E. Windle; the said J. E. Windle had and retained the right to use and enjoy said properties as though no such Trust Agreement had ever existed; the defendant Will H. Masters was required to vote the shares of stock in said corporation in accordance with the written

instructions of said J. E. Windle; the defendant Will H. Masters was required to pay over to said J. E. Windle during his lifetime the entire net income derived from said corporation; the tenure of said Will H. Masters as Trustee was completely dependent upon the will and whim of the said J. E. Windle to whom the right to change trustee was reserved; the compensation of the Trustee was limited to such reasonable sum as might be agreed upon between the Trustee and the said J. E. Windle; the Trustee was, by the said purported Trust, released and relieved from responsibility for acts or things done by the said J. E. Windle during his lifetime while J. E. Windle was managing properties under said purported Trust and carrying on the business of the properties of the said J. E. Windle which were supposedly a part of the said purported Trust corpus.

## "XI

"That said J. E. Windle did not in fact give up ownership, dominion, control, use and enjoyment of the property included under said purported Trust; that on the contrary, said J. E. Windle exercised full control and management of the property included in said purported Trust and enjoyed the income therefrom and the benefits thereof and dealt with the same as if no Trust had in fact been created, and during said period said defendant Will H. Masters was in fact without discretion and without authority with regard to said property, and in fact the ostensible creation of said Trust was a patent veil for the continued control, use and enjoyment of the said property by the said J. E. Windle.

## "XII

"That plaintiff has no plain and speedy remedy at law."

This was followed by the prayer wherein plaintiff asked for judgment and decree essentially as follows: (1) Adjudging that said purported trust agreement

dated March 4, 1938, is illusory and void and that all property included therein passes to the heirs at law of the said J. E. Windle; (2) adjudging that said purported trust agreement is fraudulent and void as against the creditors of the estate of said J. E. Windle, deceased, and particularly against the plaintiff as a quasi-creditor and as surviving spouse of said J. E. Windle, deceased; and (3) that the defendants and each of them be enjoined and restrained from selling, charging or in any way dealing with any of the shares in said Oregon Realty Co. or any of the property owned by said corporation during the pendency of the suit.

The alleged trust agreement is not made an exhibit to the second amended complaint and, therefore, our entire knowledge of its contents is found solely in the allegations of the pleading to which the demurrer was addressed.

■ The rules which govern our inquiry have been well and long established. A complaint when challenged by demurrer is to be construed most strongly against the pleader. *Musgrave et ux. v. Lucas et ux.,* 193 Or 401, 408, 238 P2d 780; *Aune v. Oregon Trunk Railway,* 151 Or 622, 626, 51 P2d 663; *Brosius v. Hazelwood,* 127 Or 635, 637, 271 P 992. The pleader is presumed to have stated his case as strongly as the facts justify. See *Morton v. Wessinger,* 58 Or 80, 83, 113 P 7, and cases there cited. Facts not alleged will be presumed not to exist. *Libby v. Olcott,* 66 Or 124, 128, 134 P 13. These rules attain an additional persuasive force when the plaintiffs, as here, did not ask for authority to further amend their complaint. *Ritchie v. Thomas et al.,* 190 Or 95, 116, 224 P2d 543; *Medford v. Pac. Nat'l Fire Ins. Co.,* 189 Or 617, 628, 219 P2d 142, 222 P2d 407; *Walin et al. v. Young,* 181 Or 185, 192, 180 P2d

535; *Christopher v. McGuire,* 179 Or 116, 119, 169 P2d 879.

Counsel for plaintiffs in argument contended for a rule of construction contrary to the rule hereinabove stated. We are mindful that *Griffith v. Hanford,* 169 Or 351, 360, 128 P2d 947, seems to indicate a departure from the previous rule of construction to which we have so long consistently adhered and gives apparent countenance to one favoring a more liberal construction when a pleading is challenged, as here. *Griffith v. Hanford,* supra, took note of the fact that the Field Code intended to inaugurate a more liberal construction of pleadings than the common-law rules employed. It took note of § 1-902, OCLA. Having so done, the decision quoted from Clark on Code Pleading the test which that authority advocates: "fair notice to the opposing side and to the court." It found that the pleading challenged in that case gave fair notice and sustained its sufficiency. Nothing said in that decision must be deemed as at variance with the rule which operates most strongly against the pleader when a demurrer challenges the sufficiency of his pleading.

It is necessary that we first determine as precisely as possible the theory or theories upon which the plaintiffs rest their claim for relief, in order that we may thereafter more exactly test the sufficiency of their complaint by rules of pleading appropriate to the theory or theories upon which they apparently place reliance.

It is a task fraught with difficulty. The composition peculiar to the pleading, as drawn, does not lend itself to a ready answer. In its overall aspects it is a hybrid to the conventional rules and a stranger to judicial experience. In terms of its purported objectives, it is at times so vague and evasive that it

wants in the commendable result of giving "fair notice to the opposing side and to the court."

Appellants' briefs add to the confusion. As will hereinafter be demonstrated, two different and conflicting theories are therein proclaimed. The last one is apparently given more exact and positive definition by the statement made in this court for the first time to the effect that plaintiffs are here asking for a declaratory judgment.

■ In proceeding to discover whether the complaint sufficiently pleads any theory rendering it invulnerable to respondents' demurrer, we will also be governed by a further rule well stated in 1 Bancroft, Code Pleading, 366, § 220, as follows: "* * * [the court] will sustain the complaint if it states a cause of action on any theory, even if it is not the one the plaintiff intended * * *."

This invites examination of plaintiffs' first theory suggesting recovery of the property for the benefit of the estate with its incident advantages to the widow; of plaintiffs' second theory predicated upon a suit for a declaratory judgment; and, in addition, of any other theories that might sustain the pleading if the first two fail to meet the test posed by the demurrer.

### Statement of Plaintiffs' First Theory

Plaintiffs' first announced theory has the earmarks of a suit or action for the restitution of property belonging to the estate. In their opening brief this is stated in the following words:

"Appellant filed suit against the purported trustee and the beneficiaries on February 24, 1948 *to have the said J. E. Windle's property brought into the estate for administration and disposition according to the law of intestacy. * * *"* (Italics ours.)

We digress to observe that in no way are the "beneficiaries" impleaded nor is there any allegation indicating that the "beneficiaries", whoever they may be, have or claim any interest in the subject matter of the litigation adverse to plaintiffs.

The foregoing statement taken from plaintiffs' first brief finds a faint echo in the first paragraph of the prayer for relief reading:

> "Adjudging that said purported Trust Agreement dated March 4, 1938 is illusory and void *and that all property included therein passes to the heirs at law of the said J. E. Windle."* (Italics ours.)

We submit that appellants' first theory clearly contemplates a suit or action which will place property wrongfully withheld from the estate in the possession of and under the dominion of decedent's representative for such action as may be appropriate to the administration of the estate, including the payment of creditor claims and thereafter for distribution to the heirs.

### Statement of Plaintiffs' Second Theory

In response to the claim made by respondents that the pleading was wanting in allegations showing who presently controls the property in question, the plaintiffs make this assertion:

> "Present possession of the corpus is not an essential allegation in the present suit, *because appellants seek neither delivery nor an accounting at this time. Appellants seek only a decree that the trust is void.* * * *" (Italics ours.)

This is a plain and unambiguous contradiction of the first and earlier objective which has for its purpose bringing the late J. E. Windle's property "into the

estate for administration and disposition according to the law of intestacy.''

The statement last quoted savors of the relief expected from a suit or action for a declaratory judgment. Although such a construction of the instant pleading was not contended for in appellants' brief, it was, nevertheless, urged upon the court by appellants at the time of argument.

Fairness dictates that we also call attention to a further statement of theory found in appellants' reply brief reading:

"Appellants contend that a cause of suit has been stated on at least two theories: That J. E. Windle died intestate the owner of the property involved, a share of which is now sought by his widow, Mary E. [sic] Windle, and secondly, that if a trust was in fact established by J. E. Windle on March 4, 1938, it constituted a fraud upon the marital rights of his wife.''

The first theory, as expounded in the last quotation from appellants' brief, is in essence a reiteration of the theory advanced in their opening brief with the difference that it ignores the instrument of March 4, 1938, as a fraudulent conveyance and assumes that someone holds, adversely to the estate, property which the decedent Windle *owned* at the time of his death. It also narrows the purpose of the recovery to the acquisition of the widow's interest therein. The second theory, as indicated by the foregoing quotation, likewise limits the objective of the litigation to one serving the interests of Mrs. Windle alone but apparently contemplates only a declaration that the conveyance of March 4, 1938, constitutes a fraud upon her ''marital rights''.

Examining the pleading in the light of the last quoted statement of plaintiffs' theories, it is clear that

the instant litigation is brought with no real solicitude for the rights of creditors or decedent's issue, if any, but solely for the use and benefit of the plaintiff in her capacity as widow of J. E. Windle.

For the purpose of the analysis which follows, we will accept, with all the limitations it connotes, the statement of appellants' theories as reflected by the last quotation from their reply brief; and in the absence of any allegation in the pleading or in appellants' briefs to the contrary, we will assume that appellants' several theories are urged in behalf of both plaintiffs.

It should not be forgotten that the subject property for which restitution is sought, or, in the alternative, concerning which a declaration is prayed for, is *personal property*. Although the language employed in the pleading might at times suggest that real property as well as personal might be involved, we are satisfied that only shares of capital stock of the Oregon Realty Co. are the subject matter of the alleged purported trust conveyance (Paragraphs VI and X of the complaint). This precludes any question of dower and narrows the widow's claim of "marital rights" to such as might accrue to her as "support money" during the first year of the period of probate (§ 19-603, OCLA) and such as she might be found to have in the personal property of the estate at the time of distribution under the law with reference thereto as it was on September 19, 1943, when her husband died intestate. If Mr. Windle died without issue, then his widow would take all the personal property available for distribution; but if he died leaving issue, then her share would be one half of such personal property. § 16-102, OCLA.

As a matter of convenience and in the interest of clarity, we will examine appellants' theories in the inverse order of their presentation.

*Theory as a Suit for a Declaratory Judgment*

In view of our final holding in this matter, we find it unnecessary to determine whether "marital rights" of the kind asserted by the plaintiff widow are sufficient to give her a legal right or status as a party plaintiff to set aside an alleged fraudulent conveyance executed by her husband to her apparent disadvantage or to examine the sufficiency of the allegations respecting the circumvention of her "marital rights". We will, however, for sake of argument only, assume that such a right reposes in plaintiff as the decedent's widow and that it is properly pleaded.

For the same reason, it is not necessary to determine whether or not the plaintiff as administratrix can invoke the provisions of the Uniform Declaratory Judgment Act for the purpose of having a given conveyance declared fraudulent and void without also seeking the additional or incidental relief of obtaining possession of the property so conveyed and thereafter applying it for the benefit of the estate in the due course of administration.

■ It is our considered opinion that plaintiffs' claim that this is an action for a declaratory judgment can avail them nothing. Aside from counsel's assertion that the complaint was so laid, there is nothing in the pleading itself that would remotely suggest such intendment. The cardinal defect which defeats plaintiff's theory, in this respect, is the absence of any allegations indicating the presence of a justiciable or actual bona fide controversy existing between plaintiffs and defendants. *Recall Bennett Committee v. Bennett et al.,* 196 Or 299, 249 P2d 479; *Hickey v. City of Portland,* 165 Or 594, 109 P2d 594; *Oregon Cry. Mfgs. Ass'n v. White,* 159 Or 99, 78 P2d 572.

In 1 Anderson, Declaratory Judgments 2d ed, 588-589, § 253, the following statement is made concerning the necessary allegations of a complaint for a declaratory judgment:

> "It is necessary for a complaint in a declaratory judgment action to be sufficient to state some facts which would warrant present or future coercive relief, or charges the invasion or threatened invasion of legal rights, or failure on the part of the defendant to discharge some positive legal duty with respect to some right of the plaintiff. If a complaint fails to contain such charges or allegations then it fails to state cause of action for a declaratory judgment.
>
> "* * * * * *
>
> "In other words, it is well established that a complaint for declaratory relief is legally sufficient if it sets forth facts showing *the existence of an actual controversy* relating to the legal rights and duties of the respective parties and requests that these rights and duties be adjudicated by the court." (Italics ours.)

There is nothing in the instant pleading to indicate that the defendants or either of them have all or any part of the property in question or make any claim with reference thereto adverse to plaintiffs, nor is it alleged that Will H. Masters is presently trustee under the alleged trust instrument here pleaded.

*Theory as a Suit or Action for the Restitution of Property for the Benefit of Decedent's Estate*

It will be helpful to recall at this point appellants' own statement respecting their first theory: "That J. E. Windle died intestate the *owner* of the property involved, a share of which is now sought by his widow, Mary E. [sic] Windle * * *." (Italics ours.) This is in harmony with the statement found in appellants'

first brief to the effect that the suit was brought "to have the said J. E. Windle's property brought into the estate for administration and disposition according to the law of intestacy."

When property is held by a third person under a claim of right adverse to the estate of decedent and the decedent's representative asserts some interest therein for the use and benefit of the estate he represents and desires to bring such property under his dominion and control for the purposes of estate administration, he ordinarily can resort to one of two courses, depending upon the character of the adverse claim of such third party.

■ If the adverse party holds the same under an alleged fraudulent conveyance, the personal representative may, after first obtaining authority under § 19-310, OCLA, bring a suit in equity in the nature of a creditor's bill to have the conveyance declared void as to the estate creditors.

If, however, the decedent's representative desires to recover personal property belonging to the estate as property *owned by decedent at the time of his death,* the representative must, under the circumstances, invoke the aid of law in an action appropriate to the circumstances, such as actions in replevin, trover and conversion or for money had and received.

We have previously indicated that appellants' pleading is insufficient to support a suit or action under the Uniform Declaratory Judgment Act whether predicated upon either theory advanced by them.

We shall now show that if, under appellants' first theory, the objective is to bring the property under the administratrix' dominion for the ultimate purpose of satisfying the widow's marital claims, then

resort cannot be successfully had in equity, and only an action at law will serve that purpose.

Generally, the reasons for the foregoing conclusion are as follows:

(1) The first theory as stated in both briefs envisions ownership of the property in question in J. E. Windle at the time of his death and, therefore, available in the course of the estate administration for (a) the payment of estate creditors and (b) distribution or, as stated by plaintiffs, "disposition according to the law of intestacy";

(2) A suit in equity to set aside as fraudulent the instrument of March 4, 1938, would produce a result favorable only to the estate creditors and would not make any property so conveyed available for the satisfaction of any marital rights claimed by the plaintiff widow; and

(3) The pleading, as drawn, negatives the existence of any subsisting trust or conveyance as of the date of J. E. Windle's death which operated to transfer title to the property in question from himself to any third party prior to his demise, and it therefore follows that personal property in which he held legal title at the time of his death must be pursued and recovered by an action at law.

We shall now proceed to examine these reasons in the order of their presentation.

The first reason above assigned finds its support in the language employed in plaintiffs' briefs heretofore quoted.

The second reason, namely, that the benefits accruing from a creditor's bill in equity inures only for the benefit of the creditors, finds support in the law relating to fraudulent conveyances generally, and more

particularly in the statutes which limit and define the rights and duties of a decedent's representative who seeks to void a conveyance of his decedent as fraudulent.

■■ Even if such a transfer might be declared fraudulent, the law recognizes that a conveyance or assignment to hinder and delay creditors is *only void against the creditors to the extent of their claims* but is binding on the fraudulent transferor and his representatives. *Hahn v. Salmon,* 20 F 801, 807; also see *Barhan v. Bogard et al.,* 128 Or 218, 221, 270 P 762; *King v. Miller,* 53 Or 53, 64, 97 P 542; *Bradtfeldt v. Cooke,* 27 Or 194, 199, 40 P 1, 50 Am St Rep 701. This same principle is incorporated in the statutes upon which decedent's representative must depend for authority to institute looking to the voiding of a fraudulent conveyance for the benefit of estate creditors. §§ 19-310—19-312, inclusive, OCLA. Section 19-312 provides:

> "The property recovered by means of any proceeding in pursuance of the last two sections is to be sold and appropriated to supply the deficiency mentioned in section 19-310 in the same manner as other like property; *but the right to or interest in the surplus, if any, remains as if such proceeding had not been allowed or commenced."* (Italics ours.)

In her capacity as a creditor of her husband's estate (see Paragraph VIII of the complaint) and possibly in her capacity as a quasi-creditor, if one in fact, Mrs. Windle might enjoy the fruits of a creditor's bill brought by the estate's administratrix; but here her greatest concern, repeatedly asserted, is to be compensated in terms of her "marital rights", i.e., to obtain a "disposition according to the law of intestacy" or "a share * * * sought by his widow."

A creditor's bill brought by the administratrix for the benefit of the estate obviously would not serve that purpose and warrants the presumption that equitable relief of that character was not intended to be secured by the instant pleading. Indeed, when counsel for appellants was asked during the course of the argument if the instant pleading was not in the nature of a creditor's bill, he replied in the negative.

The third reason why appellants' first theory must fail is, as stated above, that the pleading on its face, by its particular allegations hereinafter referred to, negatives the existence of any transfer of title. This evident fact would also render the complaint vulnerable when tested by demurrer to a creditor's bill to set aside a fraudulent conveyance for the estate creditors' benefit or as an "illusory trust" created to defraud the plaintiff widow of her "marital rights."

A cursory examination of the pleading might seem to indicate that plaintiffs plead that the instrument of March 4, 1938, was a fraudulent conveyance effecting a transfer of decedent's property to hinder, delay and defraud his creditors. Such a seeming support for such a proposition may be found from a reading of Paragraphs VI, IX, X and XI of the complaint; but what a casual examination of the pleading seems to warrant in that respect is dissipated by a closer and more critical examination of the matter found in those paragraphs.

■ It is axiomatic that before a suit to set aside a conveyance as fraudulent can be maintained, there must be a transfer or some other change in title. If the debtor did not succeed in effecting any change in title, under applicable rules of law, then the debtor still has the asset. 1 Glenn, Fraudulent Conveyances, 76, § 55.

■ A trustee is not chargeable with the property of a fraudulent grantor which has never been in his possession or under his control, unless by reason of the trustee's fraudulent acts and connivance the creditors have been injured by the placing of the property beyond their reach. *Putzel v. Shulhof,* 13 NYS 231; *Bollings Ex'r v. Harrison,* 2 Pat & H (Va) 532; 37 CJS, Fraudulent Conveyances, 1114, § 279.

■ As a logical consequence of these cardinal essentials, a petition or complaint seeking to set aside a conveyance as fraudulent must aver a transfer of the property in question and describe the instrument by which it was accomplished. *Lyden v. Spohn-Patrick Co.,* 155 Cal 177, 100 P 236, 239; *Doerfler v. Schmidt,* 64 Cal. 265, 30 P 816; 3 Bancroft, Code Pleading, 2396, § 1471; 37 CJS, Fraudulent Conveyances, 1190, § 359.

■ We search the pleading in vain for such an averment of transfer of Mr. Windle's property from himself as the trustor to the defendant Will H. Masters as the trustee. The only allegation employing the word "transfer" or its derivative "transferred" is found in Paragraph VI of the complaint. It reads:

> "That prior to and at the time of his death, said J. E. Windle was the owner of, and exercised full control and management of and enjoyed the income and benefits from all property carried in the name of the Oregon Realty Co., although said property purportedly was held under the terms of a certain Trust dated March 4, 1938 whereby the capital stock of Oregon Realty Co. was *assertedly transferred* to defendant Will H. Masters as Trustee." (Italics ours.)

Obviously, this is not a plain and concise statement of the required fact of transfer contemplated by the statute (§ 1-704, OCLA). Insofar as Paragraph VI

relates to the defendant Masters, it is, in essence, solely an allegation descriptive of terms of a purported trust instrument "whereby the capital stock * * * was assertedly transferred" to that defendant.

Perhaps our criticism of Paragraph VI might be tempered if we could find in the pleading an allegation that the defendant Masters had ever had possession of the stock in question on or subsequent to March 4, 1938. Possession, together with the other circumstances pleaded, might be taken as connoting delivery and acceptance of trusteeship under the challenged conveyance; but there is not present any averment from whence possession might even be inferred.

It is essential to the creation of an express trust that the trustor presently and unequivocally make a disposition of the property by which he divests himself of the full, legal and equitable ownership thereof. The legal title must be definitely reposed in a trustee whether he is the trustor or another. *Stephens et al. v. Tipton et al.,* 128 Or 115, 118, 268 P 1014; 54 Am Jur, Trusts, 45, § 34; 65 CJ, Trusts, 308, § 74.

A careful examination of Paragraphs VI, IX, X and XI convinces us that appellants there disclose their conscious and studied effort to avoid making any allegations from whence it might be inferred that there was any conveyance which effectuated a transfer of title or possession of the stock certificates to the defendant trustee or, indeed, to any other defendant. Reading these paragraphs together, it will be readily seen that all the appellants there claim is that on March 4, 1938, the decedent executed a "purported" trust or an "ostensible" trust (see Paragraph XI) colorable only as to the existence of a trust but working no transfer of title or possession of the stock from the decedent, with the result that decedent at all times

from March 4, 1938, to the day of his death was sole owner of the property in question.

This conclusion is confirmed by a reading of Paragraph XI which is as follows:

> *"That said J. E. Windle did not in fact give up ownership, dominion, control, use and enjoyment of the property included under said purported Trust;* that on the contrary, said J. E. Windle exercised full control and management of the property included in said purported Trust and enjoyed the income therefrom and the benefits thereof and dealt with the same as if no Trust had in fact been created, and during said period said defendant Will H. Masters was in fact without discretion and without authority with regard to said property, and in fact the *ostensible creation of said Trust* was a patent veil for the continued control, use and enjoyment of the said property by the said J. E. Windle." (Italics ours.)

It is in Paragraph XI that the instrument inveighed against is described as an "ostensible creation". Funk and Wagnalls New Standard Dictionary defines the word "ostensible" as meaning "* * * seeming; professed; pretended: often, tho not always, implying a concealment of or divergence from the real facts." Webster's New International Dictionary states that "ostensible" is often used as opposed to *"real or actual"*. It is synonymous with "colorable". Webster's Dictionary of Synonyms. "Colorable" is a word legally defined as "That which has or gives color; that which is in appearance only, and not in reality, what it purports to be, hence counterfeit, feigned, having the appearance of truth." 15 CJS 237. A "colorable transaction", such as an ostensible trust, is "one presenting an appearance which does not correspond with the reality, and, in the sense ordinarily contended for, an appearance intended to conceal or deceive."

15 CJS 238, note 10, citing *Osborn v. Osborn,* 102 Kan 890, 172 P 23, 24.

The same thought is reiterated throughout plaintiffs' entire pleading. Wherever reference is made to the instrument of March 4, 1938, it is described as a "purported trust" (see Paragraphs VI, VII, IX, X and XI and Paragraphs (1) and (2) of the prayer of the complaint). Read in terms of the context in which it is repetitiously used, the inescapable "implication of the word 'purported' is that something is deficient or amiss; everything is not as it is intended to be." *General Talking Pictures Corporation v. Hyatt,* 114 Utah 362, 199 P2d 147, 149 (1948). As here applied to the word "trust", we read it to mean that the instrument of that date, although having the form of a conveyance in trust, did not in fact operate to create a trust or transfer any title thereunder.

That the writing referred to in the pleading did not effectuate and was not intended to effectuate a transfer of title from the decedent to a trustee and was only an "ostensible" pretense of such an accomplishment is given further emphasis when we reread the first clause of Paragraph XI, where it is said: "That said J. E. Windle did not in fact give up ownership, dominion, control, use and enjoyment of the property included under said purported Trust * * *."

"The word 'ownership' varies in its significance according to the context and the subject matter with which it is used." 73 CJS, Property, 190, § 13.

Giving due weight to all the matter appearing in Paragraph XI of the pleading and particularly to the words following "ownership", as employed in the first clause of that paragraph, we find it tantamount to an allegation that J. E. Windle at the time of his death

had both the title to and possession of the property referred to in the "ostensible" or "purported" trust.

Even if a successful contention to the contrary could be made, the pleading is yet silent in two vital particulars, i.e., (1) that a transfer was made to the defendant Masters and (2) that he has now or ever had possession of any of Windle's property as a trustee or otherwise. In *Winters et al. v. Winters et al.,* 165 Or 659, 665, 109 P2d 857, it is said: "* * * in order to establish a voluntary trust with a third person as trustee, there must be a delivery of the trust property to the trustee, or an assignment passing legal title to the trustee."

The construction which we have hereinabove applied to Paragraphs VI, VII, IX, X and XI of plaintiffs' complaint is warranted by the rule which imposes upon us the duty to construe the pleading most strongly against the pleader.

█ We are not unmindful that in the prayer of the pleading the "purported" trust is for the first time called "illusory". Plaintiffs exploit the phrase "illusory trust" to some length in their briefs; but an "illusory trust" and an "ostensible trust" are not synonymous terms.

An "illusory trust" connotes a definite and distinctive legal situation having elements not pleaded here. It is a term reasonably new to the law and projects a doctrine not yet enjoying universal or wide acceptance. The leading case expounding the doctrine of "illusory trust" is *Newman v. Dore,* 275 NY 371, 9 NE2d 966, 112 ALR 643 (1937). Also see discussions of this case and its underlying doctrine in 1 Scott, Trusts, 350, § 57.5, and 44 Mich L Rev 151 et seq.

An illusory trust is predicated upon a fraud of marital rights. It connotes a trust made inter vivos

and designed to circumvent a surviving spouse from receiving such interest in the estate of the deceased spouse as he or she might rightfully expect under the law had the deceased spouse died vested with title to the property conveyed by the trust instrument. *Newman v. Dore,* supra; 44 Mich L Rev 151.

It has all the attributes in form and substance of a conveyance in trust designed to defraud creditors, including *the transfer of title to third parties as trustees. Newman v. Dore,* supra, 9 NE2d 967; *Bolles v. Toledo Trust Co.,* 144 Ohio St 195, 58 NE2d 381, 384. It differs from a conveyance in fraud of creditors in that the fraud asserted is a fraud against the marital rights of the testator's spouse.

An illusory trust is not to be confused with colorable or ostensible transfers. 44 Mich L Rev 153.

This appeal imposes no necessity to weigh whether or not we should embrace the novel doctrine of illusory trusts as a part of our law; but even if we were so inclined, we would, nevertheless, be impelled to declare that it is not here sufficiently pleaded to save the complaint against respondents' demurrer in that there is no allegation of transfer but rather allegations tantamount to retention of title and possession in J. E. Windle.

### Other Theories

Thus far we find that the pleading is insufficient to support a cause of action or suit for a declaratory judgment or a creditor's bill. The manner in which the pleading refers to the instrument of March 4, 1938, renders such allegations innocuous as support for pleadings of that kind. At most they are only allegations anticipating possible defenses of the defendants. As such they are surplusage serving no purpose here.

Under the impulse to sustain the pleading if we can under some theory "even if it is not the one the plaintiff intended" (1 Bancroft, Code Pleading, 366, § 220), we again examine the pleading to determine if it sufficiently alleges an action at law.

 We have heretofore pointed out that the law, if not equity, offers its own particular remedies when the object is to bring property of the estate under the dominion of a personal representative for purposes of administration and distribution. We have referred to the actions in replevin, trover and conversion and for money had and received as exemplifying such remedies when properly applied. The gist of all these actions is that a wrongdoer has deprived a person (or his estate, if deceased) of the possession of property to which he is entitled and for which recovery or compensation is sought. Because of the character of the property here involved, only replevin or trover and conversion might possibly be appropriate; but here they are unavailable to plaintiffs for the obvious and herein often-repeated reason that the instant pleading fails to allege that the stock of the Oregon Realty Co. is in the possession of any one of the defendants or ever was. In any event, the inapplicability of either of these actions, particularly that of replevin, is confessed by plaintiffs in their declaration that appellants "seek neither delivery nor an accounting."

The pleading under consideration represents plaintiffs' third opportunity to state a good cause of suit. We can only presume that in their last attempt they stated their case as strongly as the facts justify (*Morton v. Wessinger, supra,* 58 Or 80); that their failure to allege a transfer of title from decedent Windle to Masters as trustee is because no such transfer was made; and that such is equally true concerning other

essential allegations not found within the pleading. Mrs. Windle is not a stranger to the courts, as indicated by her office as administratrix and the litigation referred to in Paragraph VIII of the complaint. Moreover, time has not worked to her disadvantage. The transaction complained of was made more than five years before Mr. Windle's death on September 19, 1943, and plaintiffs' first complaint in this suit was not filed until nearly five years thereafter, on February 24, 1948. According to Paragraph VIII, Mrs. Windle has enjoyed the status of a creditor of her husband since January 8, 1943. It is, therefore, difficult for us to believe that she did not know of the existence of the trust long before his demise. Certainly, there were ample remedies then available whereby she could have, during decedent's lifetime, brought him to bar if she had claims against him. These included her privilege, as a creditor, to resort to a creditor's bill, if she seriously felt her husband's actions fraudulently circumvented any right in his estate which she presently claims in her status as a creditor (Paragraph VIII). To the contrary, the widow has waited long after his passing before raising her voice against an instrument which was close to ten years old when she filed her first complaint in this matter.

These delays, plus a labored effort to state a sufficient cause of action, evidenced by three imperfect complaints, are circumstances which leave us with a feeling that no substantial or valuable rights of Mrs. Windle have been defeated or denied by the application of the rules of pleading here made.

The lower court is affirmed.