Argued and submitted April 15, reversed and remanded August 17, 1988

HOCKS,
*Appellant,*

*v.*

JEREMIAH,
*Respondent.*

(8510-06128; CA A43326)

759 P2d 312

James M. Callahan, Portland, argued the cause for appellant. With him on the briefs were Bittner & Barker, P.C., Portland.

Ferris F. Boothe, Portland, argued the cause for respondent. On the brief was Thomas S. Boothe, Portland.

Before Warren, Presiding Judge, and Rossman, Judge, and Riggs, Judge pro tempore.

ROSSMAN, J.

## ROSSMAN, J.

Plaintiff, personally and as personal representative of the estate of Robert Hocks (Hocks), appeals from a judgment after trial to the court dismissing her action against Hocks' sister, defendant Jeremiah, for replevin and conversion of personal property. Defendant asserted that Hocks gave the property to her before his death, and the trial court agreed.

Replevin and conversion are legal claims, *Geary v. Prudhomme,* 117 Or 165, 243 P 101 (1926), subject to review as actions at law. *Sautter v. Coffey,* 283 Or 303, 584 P2d 245 (1978); *Alery and Alery,* 203 Or 101, 277 P2d 764 (1955). Defendant's affirmative defense of gift must be established by clear and convincing evidence. *Johnson v. Steen,* 281 Or 361, 575 P2d 141 (1978). On review, we do not weigh the evidence but examine the record to determine whether the trier of fact could have found on the basis of clear and convincing evidence that Hocks had made a gift to defendant. *Sautter v. Coffey, supra; Alery v. Alery, supra.*

We recite the facts in the light most favorable to defendant. On December 29, 1980, Hocks arranged to meet defendant at a restaurant in Portland. He handed her two envelopes, each containing two $5,000 bearer bonds. He said "Here, I have something I want to give you. * * * This is just the beginning. I plan to give you a lot more." He told her that he was giving her the bonds because he loved her, because he was grateful for what she had done for their mother in her last years and to satisfy a promise he had made to their mother.

Hocks suggested to defendant that she place the bonds in a safety deposit box. He told her that everything in the box would be hers. They then went to a nearby bank and jointly rented a safety deposit box. Each signed the signature card, and each retained a key to the box.[1] Defendant testified

---

[1] The rental agreement provided:

"The undersigned do hereby apply for the privilege of renting the above numbered safe deposit box in accordance with the terms and conditions contained herein and on the reverse side of this card and, in consideration of such rental and the delivery of the two keys to said box, the receipt of which is hereby acknowledged, do hereby jointly and severally agree to pay the rental therefore and to comply in all respects with and to be bound by all the terms, conditions, rules and regulations referred to. The undersigned do further agree:

"1. That the right of access to said box, and the right to remove all or any part

that she offered to pay the rent on the box, but that her brother refused, saying, "Your money isn't any good." Hocks explained to defendant that the bonds were like cash and that the interest on them could be collected by clipping and redeeming the coupons. Defendant told Hocks that she and her husband did not need the money and that she preferred that he collect the interest on the bonds. He told her that that was fine but that, if she ever needed money, she should go to the box and clip the coupons, letting him know so that he did not waste a trip to the bank. Defendant and Hocks never talked about the interest coupons again.

In 1981, shortly after they opened the box, Hocks told defendant that he was giving her an "investment" diamond and that he had put it in the safety deposit box. Over the years, Hocks mentioned to defendant when they met or spoke that he had added more bonds to the box. By the time of his death in March, 1985, he had added 22 bonds to the box.

From December 12, 1980, until two days after Hocks' death, defendant never opened the box. She testified that, although she did not believe that she needed Hocks' authorization to open and remove the bonds or coupons, she would not have done so without it. Hocks visited the box regularly to clip the coupons and to add more bonds and the diamond.

Defendant testified that, one day in the summer of 1984, over coffee at the restaurant, she asked her brother to leave a note in the safety deposit box indicating her interest, because, in the event of his death, it would save her "a lot of hassle." She was concerned at the time that there would be

---

of the contents thereof or to surrender the possession of the box, or to appoint an agent or deputy to perform any of the acts herein stated, may be exercised by either of the undersigned without the consent or notice to the other of the undersigned, or to any other person.

"2. That in the event of the death of either of the undersigned, the bank may permit the survivor to continue to have access to said box in the same manner and to the same extent as though such survivor had originally rented said box for his or her sole use.

"3. That, although the bank is authorized to permit access by the survivor in the manner herein above stated, it may, in its discretion, require, as a condition precedent to such access, a written release from the personal representative of the deceased renter of any interest in said box or in the contents thereof.

"4. That this agreement and the conditions and regulations printed on the back hereof are binding upon the heirs, executors, administrators and assigns of the undersigned."

problems with her sister-in-law, plaintiff here. She thought that a note from Hocks would "put the icing on the cake." Hocks placed two handwritten notes in the box. The first, dated August 17, 1979,[2] stated:

"To whom it may concern:

"In the event of my death, I do hereby give and bequeath this diamond to my sister Joan, with all my love[.]"

The second note, dated August 23, 1984, stated:

"To whom it may concern:

"Upon my death, the contents of this safety deposit box #7069 will belong to and are to be removed only by my sister Joan Jeremiah."

Defendant acknowledged in her testimony that the notes indicate an intention on the part of Hocks that the gift of the diamond and bonds take effect on his death. She testified, however, that, although he had the power to do so, Hocks would not have considered removing the contents of the box for his own use. "[M]y brother was not that way. I mean, I suppose some people are that way. When my brother gave a gift, it was a gift. It was mine." Yet, when asked why, if Hocks had made an outright gift and in view of potential problems with plaintiff, she did not remove the bonds and diamond and place them in her own safety deposit box, she answered, "Bob was still living, Bob was still living."

Burrows, Hocks' long-time friend and former attorney, testified that Hocks had told him about his plan to leave the bonds and diamond to his sister on his death, but not as a part of his testamentary disposition. Two days after Hocks' death, defendant entered the safety deposit box in Burrows' presence and removed the bonds and the diamond. Later, acting as defendant's attorney, Burrows wrote to the estate:

"I am, of course, representing Joanne and it is her position that because of the nature of the Bonds and the manner in which the box was held that she became the owner of all of the box contents upon Bob's death."

---

[2] The record does not exlain why the date on the note predates all the other acts recited above. It does indicate, however, that Hocks actually purchased the diamond in the summer of 1979 and that at that time he told the broker that he was purchasing it to diversify his investments and that it would be in a safety deposit box which he would share with his sister.

554

Defendant has retained the bonds and diamond and has collected the interest on the bonds and has cashed one of them when it became due.

An action for replevin requires proof that the defendant holds property that rightfully belongs to the plaintiff. *See Windle v. Flinn,* 196 Or 654, 251 P2d 136 (1952); *Almada v. Vandecar,* 94 Or 515, 185 P 907 (1919). It is a defense that the defendant acquired the property as a gift. *Jenck v. Taylor,* 235 Or 348, 385 P2d 179 (1963). The rules for the establishment of an *inter vivos* gift are strict. Every element must be shown by clear and convincing evidence. *Estate of McConnell v. McConnell,* 71 Or App 795, 694 P2d 982 (1985). "Clear and convincing" means that the evidence is free from confusion, fully intelligible and distinct and that the truth of the facts asserted is highly probable. *Riley Hill General Contractor v. Tandy Corp.,* 303 Or 390, 407, 737 P2d 595 (1987).

Proof of a gift requires a showing that the donor made an actual or symbolic delivery of the property to the donee by the transfer of possession and absolute dominion over the property, accompanied by a manifested intention to make a present gift. *Johnson v. Steen, supra,* 281 Or at 369. A gift to take effect in the future is ineffective. If no present interest is created at the time of delivery, there is only a gratuitous promise to make a gift in the future. If no interest is created until after the donor's death, the transaction is testamentary and ineffective, unless it is executed with the formalities required for a will. *Allen v. Hendrick,* 104 Or 202, 218, 206 P 733 (1922).

We affirm the trial court's determination that Hocks gave defendant the first four bonds. He hand delivered them to her. He told her then that they and the interest income from them were hers. She accepted the bonds but said that she would like him to have the interest from them. The facts that Hocks later had possession of the bonds, collected the interest on them and indicated that he wanted the four bonds, along with the others, to pass to defendant on his death does not negate the evidence of a completed gift. *In re Norman's Estate,* 161 Or 450, 88 P2d 977 (1939); *Gilbert v. Brown,* 71 Or 809, 817, 693 P2d 1330 (1985). That evidence is sufficient to support the trial court's finding of a gift as to the first four bonds.

As to the remainder of the property, however, the evidence was insufficient to enable the trial court to find that

Hocks had made a gift. Assuming, without deciding, that the evidence was sufficient to support a finding that Hocks *intended* to make a present gift of the property, it is insufficient to support a finding that he transfered possession and absolute dominion over those items. *See Beach v. Holland,* 172 Or 396, 405, 142 P2d 990 (1943).

■ Even if, in some circumstances, the joint lease of a safety deposit box is sufficient to constitute delivery by the transfer of possession and control, *see, e.g., Dickson v. Dickson,* 231 Mo App 515, 101 SW2d 774 (1937); *Gilkinson v. Third Av. RR Co.,* 47 App Div. 472, 63 NYS 792 (1900); *Re Parkhurst's Estate,* 402 Pa 527, 167 A2d 476 (1961); *Thomas v. First National Bank,* 166 Va 497, 186 SE 77 (1936); *but see In re Brown's Estate,* 122 Mont 451, 206 P2d 816 (1946); *In re Estate of Abromowitz,* 38 App Div 2d 387, 329 NYS2d 932 (1972); *In re Grossman's Estate,* 386 Pa 647, 126 A2d 468 (1956); *Tomayko v. Carson,* 368 Pa 379, 83 A2d 907 (1951), it is not sufficient in this case. Hocks had access to the contents of the box and could have removed the bonds or disposed of them at any time. He, exclusively, paid for and used the box, visiting it frequently. He continued to collect the interest, thereby retaining that element of ownership. In 1983, he listed the bonds that were in the box at that time among his assets available as collateral for a loan. Defendant testified that she never sought access to the box until after her brother's death and that she would not have removed items from the box while he was alive, indicating her understanding that her interest would not become possessory until his death. She was not even aware of the exact contents of the box until she opened it after Hocks' death. The two notes that Hocks placed in the box show his belief that he owned the contents.

In short, other than with regard to the first four bonds, although there is much evidence that Hocks retained and believed that he retained ownership and control of the contents of the box, there is no evidence the trier of fact could find clear and convincing that Hocks parted with control and possession of the property. We conclude, therefore, that the evidence was insufficient to enable the trial court to find that Hocks made an *inter vivos* gift of the remaining contents.[3]

---

[3] Defendant's contention concerning the creation of a trust has no merit.

Reversed and remanded for proceedings not inconsistent with this opinion.